BOLIN, Justice.
Pursuant to Rule 5, Ala. R.App. P., this Court, on December 6, 2006, granted Dr. Therese Weber and The Radiology Group, P.A., permission to file an interlocutory appeal from an order of the trial court denying then motion to dismiss a wrongful-death action alleging medical malpractice. On April 24, 2007, this Court granted *827 Jackson Hospital & Clinic, Inc. (“Jackson”), permission to appeal from the denial of its motion to dismiss in the same wrongful-death action. We consolidated the appeals for the purpose of writing one opinion.

Facts and Procedural History

On December 20, 2002, three-month-old Samuel Freeman was treated at the emergency room at Jackson Hospital, a hospital owned and operated by Jackson, and released. On December 22, 2002, Samuel died from a bowel obstruction. On December 20, 2004, Samuel’s mother, Carolyn Freeman, sued Jackson, Dr. Bryan P. Sweet, Dr. Richard Doyan, and certain fictitiously named parties pursuant to Rule 9(h), Ala. R. Civ. P. Carolyn alleged that the defendants failed to diagnose Samuel’s bowel obstruction. Specifically, Carolyn’s complaint provided, in pertinent part:
“4. The Plaintiffs Decedent, infant Samuel Freeman, was born prematurely at 31 weeks gestation. Following his premature birth, Samuel Freeman was hospitalized for approximately a ten-week period at Baptist Medical Center South in Montgomery. During this prolonged admission, Samuel Freeman suffered several bouts of abdominal distention and on November 19, 2002, the baby was transferred to Children’s Hospital so that the disorder known as Hirsh-sprung’s Syndrome could be ruled out. Based on lab studies conducted at Children’s Hospital by the infant’s physicians, the physicians were able to rule out the possibility of Hirshsprung’s Syndrome. Thereafter, Samuel Freeman was transferred back to Baptist Medical Center South on November 24, 2002, and was discharged on December 4, 200[2],
“5. On December 20, 2002, CAROLYN FREEMAN, presented to Jackson Hospital emergency room with her infant son and told DR. SWEET, the doctor on duty in the Jackson Hospital emergency room, that she believed that the infant’s abdomen was distended. Mrs. Freeman also told DR. SWEET that her son had not slept the night before, and had cried continuously. Despite the fact that Carolyn Freeman told DR. SWEET that her infant had been hospitalized just a few weeks earlier, Dr. Sweet neither obtained the infant’s previous medical records nor did he call the Baptist Medical Center South physicians who had treated the infant during that recent admission. Significantly, DR. SWEET did not perform an abdominal examination of the infant. Moreover, DR. SWEET did not order any blood tests, even though the infant was breathing significantly higher than the normal rate. DR. SWEET did order abdominal x-rays; a flat and an upright x-ray of the infant’s abdomen. The x-ray films revealed a ‘marked gaseous distention of the colon suggesting bowel obstruction,’ a condition which DR. SWEET affirmed by his handwritten notation on the infant’s emergency room medical record on December 20, 200[2]. With those radiographic findings, DR. SWEET knew or should have known of the probability that the infant was experiencing a potentially fatal bowel obstruction. However, DR. SWEET ignored the obvious signs and symptoms of a bowel obstruction and failed to reach a tentative or working diagnosis of Samuel Freeman’s medical problem. Instead, DR. SWEET merely recorded in the chart a symptom, ‘abdominal distention’ and discharged the infant with no diagnostic work up or treatment.
“6. On the morning of December 22, 2002, CAROLYN FREEMAN brought Samuel back to the Jackson Hospital Emergency Room. Samuel Freeman had been continually crying and eating poorly, and his abdomen remained distended *828 since his discharge two days earlier. Samuel Freeman was examined by Dr. Richard Doyan who performed a physical examination and found the infant’s severely distended abdomen and a left-sided inguinal hernia. Dr. Doyan noted that the infant appeared ill and dehydrated with a sunken anterior fontanel. Dr. Doyan ordered a complete blood count (‘CBC’), and blood chemistry profile and additional abdominal x-rays. The x-rays were interpreted as follows: ‘Films are consistent with bowel obstruction as described on December 20, 2002, with further increase in abdominal distention from the comparison study.’ Dr. Doyan determined that Samuel Freeman was suffering from ‘acute severe small bowel obstruction and left inguinal hernia’ and ordered the infant to be transferred to Children’s Hospital in Birmingham, Alabama (‘Children’s’), for emergency surgery to correct the small bowel obstruction.
“7. Samuel Freeman was transported to Children’s in Birmingham via Haynes Ambulance. Approximately ten minutes before reaching the Children’s Hospital’s emergency room, the infant suffered from cardiopulmonary arrest and died.
“8. An autopsy was performed at Children’s Hospital. The cause of death was listed as ‘midgut volvulus with strangulation obstruction, marked dilatation and hemorrhagic infarction of the jejunum and ileum.’

“Count One

“9. Plaintiff re-alleges paragraphs 1-8 above as if stated herein.
“10. DR. SWEET, JACKSON, AND FICTITIOUS DEFENDANTS LISTED HEREIN, negligently and/or wantonly breached the acceptable standards of practice in providing medical services to Samuel Freeman by: (a) failing to perform a proper physical examination on December 20, 2002; (b) failing to obtain a proper history of the infant’s medical history; (c) failing to timely assess, diagnose and treat Samuel’s bowel obstruction and (d) failing to call for an immediate consult with a surgeon or other specialist.
“11. The Plaintiff alleges that the negligent conduct of the defendants, including the fictitious party defendants, combined and concurred to proximately cause Samuel’s death.
“12. The Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendants in accordance with the gravity of the wrong committed by the Defendants in this case, and that it award damages to plaintiff in an amount which will adequately reflect the enormity of the defendants’ wrong in causing the death of plaintiffs decedent and which will effectively prevent other similarly caused deaths. Further, plaintiff requests that the Court enter judgment consistent with the verdict, and that it also award plaintiff interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

“Count Tim

“13. Plaintiff re-alleges paragraphs 1-12 as if fully set out herein.
“14. Jackson had a duty to insure that the physicians treating patients in its emergency room were properly trained, monitored, supervised and credentialed. Jackson failed to properly train, monitor, and supervise Dr. Sweet and allowed him to practice emergency medicine when he was not fit for such activities.
“15. Jackson had a duty to insure that it scheduled and provided a sufficient number of physicians and nurses to work in its emergency department so *829 that the health care providers working at Jackson Hospital had time to take a careful history, perform a thorough physical examination, and adequately diagnose and treat the patients admitted to the emergency department.
“16. At the time Samuel Freeman was seen in the Jackson Emergency Department on December 20, 2002 Jackson breached the above described duties and violated the applicable standard of care by failing to insure that Dr. Sweet was properly trained, monitored, supervised and credentialed to provide emergency room care to its patients and by failing to provide sufficient staff in its emergency department to properly treat the number of patients it admitted to its emergency department.
“17. In addition to [Jackson’s] independent negligence, Jackson is liable for the conduct of DR. SWEET under the doctrine of respondeat superior.
“18. The Plaintiff alleges that the aforementioned negligent conduct of the defendants, including the fictitious party defendants, combined and concurred to proximalely cause Samuel’s death.
“19. The Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendants in accordance with the gravity of the wrong committed by the Defendants in this case, and that it award damages to plaintiff in an amount which will adequately reflect the enormity of the defendants’ wrong in causing the death of plaintiffs decedent and which will effectively prevent other similarly caused deaths. Further, plaintiff requests that the Court enter judgment consistent with the verdict, and that it also award plaintiff interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

“Count Three

“20. Plaintiff re-alleges paragraphs 1-19 above as if stated herein.
“21. Jackson, Dr. Doyan and fictitious defendants negligently breached the acceptable standards of practice in providing medical services to Samuel Freeman by: (a) failing to consult with appropriate specialists in a timely fashion on December 22, 2002; (b) failing to obtain a surgery consult to determine whether Samuel needed immediate surgery in Montgomery, Alabama as opposed to sending Samuel to Children’s Hospital in Birmingham, and (c) failing to properly stabilize Samuel before transferring his care to Children’s Hospital.
“22. The Plaintiff alleges that the negligent conduct of the defendants, including the fictitious party defendants, combined and concurred to proximately cause Samuel’s death.
“23. The Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendants in accordance with the gravity of the wrong committed by the Defendants in this case, and that it award damages to plaintiff in an amount which will adequately reflect the enormity of the defendants’ wrong in causing the death of plaintiffs decedent and which will effectively prevent other similarly caused deaths. Further, plaintiff requests that the Court enter judgment consistent with the verdict, and that it also award plaintiff interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.”
(Capitalization in original.)
On September 14, 2005, Carolyn moved to amend her complaint, substituting NES Healthcare for a fictitiously named party, which the trial court granted. On February 16, 2006, Carolyn amended her com *830 plaint a second time, asserting additional claims against Jackson. The amended complaint asserted a claim against Jackson for negligently or wantonly breaching the standard of care by failing to have a policy and procedure in place to ensure that patients who had left the hospital were contacted and asked to return to the hospital when radiographs were read by board-certified radiologists and potentially life-threatening conditions were discovered. Carolyn alleged that Jackson breached the standard of care by failing to contact her after receiving information that Samuel had a potentially life-threatening condition. On March 17, 2006, Jackson filed a motion, objecting to Carolyn’s second amended complaint on the grounds that the amendment alleges totally separate and distinct acts or omissions than those alleged against Jackson in the original complaint. On May 25, 2006, Carolyn filed an amendment to clarify the second amended complaint to state that Jackson, “by and through the acts of its agent Dr. Therese Weber, while acting within the line and scope of her agency with Jackson Hospital,” breached the standard of care by negligently or wantonly failing to contact Carolyn after receiving information that Samuel had a potentially life-threatening condition. On June 7, 2006, the trial court entered an order allowing the clarified second amendment to the complaint.
On June 15, 2006, Carolyn filed a third amended complaint, naming Dr. Therese Weber and her employer, The Radiology Group, P.A., in the place of fictitiously named parties. Carolyn alleged that Dr. Weber, the radiologist who interpreted Samuel’s abdominal radiograph and correctly found a bowel obstruction, failed to follow Jackson’s protocol and notify emergency-room personnel when she had discovered a life-threatening condition. On July 7, 2006, the trial court entered an order allowing the third amended complaint.
On July 19, 2006, Weber and The Radiology Group filed a motion to dismiss or, in the alternative, a motion for a summary judgment. In their motion, they argued that the claims against them should be dismissed on the ground that Carolyn’s amended complaint did not relate back to the original complaint and, therefore, that the statute of limitations on her claims against them had run. On September 1, 2006, the trial court, after a hearing, although recognizing that Carolyn knew the identity of Dr. Weber and her employer when the original complaint was filed, denied the motion, stating:
“However, they had no information that either one of these defendants had done anything wrong regarding the standard of care revolving around the medical treatment of Samuel Freeman. Both sides admitted at oral arguments that depositions in this case, on certain parties and/or witnesses, took place after the two-year statute of limitations had run for various reasons, such as scheduling conflicts.... Due to no fault on either side, the deposition of the hospital representative, Denise Sweeney Portera, was not taken until May 17, 2006. During this deposition, plaintiffs counsel learned for the first time that not only was there a policy requiring a radiologist to contact the emergency room physician under the circumstances of this case, but that Jackson had determined from internal records, that were not part of the regular medical record and were not available to the plaintiff, that Dr. Weber had breached hospital procedures by failing to notify the emergency room department of the life-threatening bowel obstruction. The motion to file a third amendment to the complaint adding Dr. Weber and [her employer] was filed within three weeks of the deposition taken of Ms. Portera.”
*831 The trial court noted that if Dr. Weber and The Radiology Group had been named in the original complaint on the sole basis that they were identified in the medical records, Carolyn and her attorneys “would have opened themselves up to Rule 11[, Ala. R. Civ. P.,] sanctions and certainly would not have been complying with the ethical obligations owed by attorneys to pursue only valid causes of action.”
On September 29, 2006, at the request of Dr. Weber and The Radiology Group, the trial court entered a certification pursuant to Rule 5, Ala. R.App. P., allowing Dr. Weber and The Radiology Group to pursue an interlocutory appeal of its order denying them motion to dismiss Carolyn’s third amended complaint. The trial court certified the following issues: “Whether the plaintiff, after the applicable statute of limitations had run, could properly substitute Dr. Weber and her radiology group under [Rule] 9(h), [Ala. R. Civ. P.,] and [Rule] 15, [Ala. R. Civ. P.,] when the plaintiff knew the defendants’ identities at the initiation of the lawsuit, but did not name these parties as defendants until subsequent discovery of a cause of action after the applicable statute had run.” Dr. Weber and The Radiology Group then petitioned this Court for permission to appeal, which this Court granted.
On February 12, 2007, Jackson filed a “renewed” motion to dismiss the clarified second amended complaint. Jackson argued that the allegations in the clarified second amended complaint were based on wrongful conduct on a different day by a different doctor from the allegations in the original complaint. Jackson relied on this Court’s decision in Pnor v. Cancer Surgery of Mobile, P.C., 959 So.2d 1092 (Ala. 2006), in arguing that the clarified second amended complaint did not relate back to the original complaint. At Jackson’s request, the trial court entered a certification order pursuant to Rule 5(a), allowing Jackson to pursue an interlocutory appeal. The trial court certified the following issue: Whether the amendments in the clarified second amended complaint were properly allowed, after the applicable statute of limitations had run. Jackson then petitioned this Court for permission to appeal, which this Court granted.

Analysis

Dr. Therese Weber and The Radiology Group (case no. 1060001)

Carolyn argues that Dr. Weber and The Radiology Group were fictitious parties within the meaning of Rule 9(h), Ala. R. Civ. P., and that the third amended complaint therefore related back to the filing of the original complaint. We disagree.
Rule 9(h), Ala. R. Civ. P., provides:
“When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”
As this Court stated in Ex pavie Atkinson, 976 So.2d 1001, 1003 (Ala.2007): *832 true identity before filing the original complaint, Fulmer v. Clark Equipment Co., 654 So.2d 45 (Ala.1995)
*831 “This Court has stated on numerous occasions that in order to invoke the relation-back principles of Rule 9(h), that is, in order for the amended complaint with the defendant’s true name to relate back to the original complaint with the fictitious name, the plaintiff must establish (1) that the plaintiff was ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time the complaint was filed that the party subsequently named was in fact the party intended to be sued, Columbia Engineering International, Ltd. v. Espey, 429 So.2d 955 (Ala. 1983); and (2) that the plaintiff used due diligence to discover the defendant’s
*832 The purpose of Rule 9(h) is to toll the applicable statute of limitations when the plaintiff has diligently pursued the identity of, but has been unable to identify, certain defendants. The fictitious name serves as a placeholder for the defendant, and Rule 15(c) allows the claim against the substituted defendant to relate back to the date of the original complaint. Toomey v. Foxboro Co., 528 So.2d 302 (Ala.1988).
“Rule 9(h)[, Ala. R. Civ. P.,] is not intended to give plaintiffs additional time beyond the statutorily prescribed period within which to formulate causes of action. Instead, the principal reason for the rule is to toll the statute of limitations in emergency cases where [the] plaintiff knows he has been injured and has a cause of action against some person or entity, but has been unable to ascertain through due diligence the name of that responsible person or entity.”
Columbia Eng’g Int’l, Ltd. v. Espey, 429 So.2d 955, 959 (Ala.1983) (citing Browning v. City of Gadsden, 359 So.2d 361 (Ala. 1978)).
The dispositive question here is whether Carolyn was “ignorant” of the identity Dr. Weber and The Radiology Group within the meaning of Rule 9(h) when she filed her original complaint.
In Marsh v. Wenzel, 732 So.2d 985 (Ala. 1998), a patient brought a medical-malpractice action against a surgeon who had removed tissue from her breast but had failed to diagnose it as cancerous. She also sued several fictitiously named parties under Rule 9(h), Ala. R. Civ. P. After she deposed the pathologist who had also examined the tissue and failed to diagnose the cancer, the patient substituted the pathologist for one of the fictitiously named defendants. In Marsh, the patient argued, pursuant to Rule 9(h), Ala. R. Civ. P., that she was ignorant of the identity of the pathologist when she filed her action. “However, ... one could not reasonably conclude that she was ignorant of matters — such as the name of the pathologist who examined the tissue samples — -that clearly were set forth in her medical records.” 732 So.2d at 990. We concluded that the patient had not been ignorant of the identity of the pathologist but of her cause of action against him and that Rule 9(h) excused only ignorance of the identity of the party against whom a cause of action had been stated in the original complaint. Therefore, this Court held that the patient’s claims were time-barred because she could not have reasonably been ignorant of the pathologist’s identity, and her claims against the pathologist, therefore, did not relate back to her original complaint.
In Ex parte Snow, 764 So.2d 531 (Ala. 1999), the issue was whether a plaintiffs ignorance of a cause of action against a particular defendant is treated the same as the plaintiffs ignorance of the identity of that defendant. In Snoiv, the patient and her husband brought a medical-malpractice action against the surgeons who performed an operation to alleviate her pain caused by gallstones. They also listed other fictitiously named defendants. After the statute of limitations had run, they sought to substitute the names of two other surgeons who had performed a different operation to remove the patient’s gallbladder. The plaintiffs argued that the substitution of the fictitiously named defendants related back to the date of the filing of the original complaint because, they said, it was not until a deposition was taken that they learned that the two other surgeons had acted negligently. The plaintiffs admitted that they knew the names of the two surgeons and the procedure they had *833 performed when they filed them original complaint. This Court held although the plaintiffs may not have known the significance of the information they had regarding the two surgeons and the operation performed, “it was incumbent upon them to learn of that significance” before the running of the statutory period. 764 So.2d at 537.
In Harmon v. Blackwood, 623 So.2d 726 (Ala.1993), the personal representative of his son’s estate knew the identity of a treating physician when the original complaint was filed. However, he sought to substitute the treating physician for a fictitiously named defendant. This Court stated:
“When the plaintiff filed the original complaint against the two named defendants and the fictitiously named defendants number 3 and number 4, he was apparently relying on a discussion with Dr. Edward Cornier, a neonatologist, concerning the involvement in the child’s death of the nurses in the nursery at the hospital and of the obstetrician who had delivered the child. Nonetheless, when a plaintiff kuoivs the name of a physician and the involvement of that physician in the treatment of the patient, it is incumbent upon the plaintiff, before the running of the statutory period, to investigate and to evaluate his claim to determine tuho is responsible for the injury and to ascertain whether there is evidence of malpractice. In this case, the plaintiff did not do that.”
623 So.2d at 727 (emphasis added).
In the present case, Carolyn argues that her substitution of Dr. Weber and The Radiology Group for fictitiously named parties should be allowed because, she says, when she filed her original complaint she was unaware of Jackson’s protocol requiring radiologists to notify emergency-room personnel if they discovered a life-threatening condition in a patient who had left the emergency room. However, Carolyn was not “ignorant” of a relationship that gave rise to a duty. Carolyn knew of the identity of Dr. Weber and The Radiology Group and knew that Dr. Weber had interpreted Samuel’s abdominal radiographs (the only diagnostic test performed on Samuel during his visit to the emergency room) before she filed her action. Because she knew of Dr. Weber’s involvement in Samuel’s treatment, it was incumbent upon her, before the statute of limitations on her claim expired, to investigate and evaluate the claim to determine who was responsible for Samuel’s death. Carolyn attempts to raise an argument that, under Rule 11, Ala. R. Civ. P., she could not, in good faith, have named Dr. Weber and The Radiology Group as defendants, because she was unaware of Dr. Weber’s negligence. However, given the facts of this case, there was a reasonable, good-faith basis for counsel to have named Dr. Weber in the original complaint.
This Court recently applied Rule 9(h), Ala. R. Civ. P., to allow a plaintiff to substitute a real party for a fictitiously named defendant where the plaintiff knew of the identity of the defendant before filing the action. See Ex parte Bowman, 986 So.2d 1152 (Ala.2007). However, we find Ex parte Bowman to be distinguishable. In Bowman, the plaintiff was injured on a fermenter tank located at his place of employment. The plaintiff and his wife sued the manufacturer of the tank and several fictitiously named defendants, alleging that they had been negligent in designing, manufacturing, and installing the fermenter tank. After the statute of limitations had run, the plaintiffs filed a motion to amend their complaint to substitute the employer’s quality-assurance manager. The quality-assurance manager filed a motion to dismiss on the ground that the amended complaint did not relate back to the original complaint, which the *834 trial court denied. The manager then petitioned this Court for a writ of mandamus directing the trial court to dismiss him as a defendant. We held that although the plaintiffs knew the identity of the quality-assurance manager at the time the original complaint was filed, they were unaware that he had also been responsible for acquiring, installing, and modifying the tank. The fact that the plaintiffs knew that the manager was in charge of quality control of the product ultimately produced by the employer was not related to the plaintiffs’ claim. “There is no logical and necessary linkage between knowledge that such an individual was a participant in acquiring, installing, and modifying the machine that makes the product.” 986 So.2d at 1157. This Court denied the manager’s petition.
In the present case, the medical records obtained by Carolyn before she filed her action showed that Dr. Weber and The Radiology Group read the radiographs of Samuel’s abdomen and discovered an obstruction. Carolyn’s complaint did not allege that a fictitiously named party failed to contact Carolyn after determining that Samuel had a life-threatening condition, nor did the original complaint allege that a fictitiously named party failed to comply with hospital protocol (or common sense for that matter) by not contacting the emergency-room physician to notify him of the life-threatening condition discovered in the radiograph. In contrast, the plaintiffs in Bowman alleged that a fictitiously named party was negligent in designing, manufacturing, and installing the tank, and they later substituted the manager as one of those fictitiously named parties involved in installing the tank.

Jackson (case no. 1060854)

Jackson argues, and we agree, that Prior v. Cancer Surgery of Mobile, P.C., 959 So.2d 1092 (Ala.2006), is dispositive of whether Carolyn’s clarified second amended complaint relates back to the original complaint.
In Prior, the personal representative of a cancer patient’s estate filed a medical-malpractice action against Dr. Bradley Scott Davidson and his employer, the surgery center. She also asserted claims of vicarious liability. She amended the complaint once to comply with the specificity requirements of § 6-5-551, Ala.Code 1975. She filed a second amended complaint, seeking to hold the surgery center vicariously liable for the actions of another of its employees, Dr. Gaylord T. Walker. Dr. Walker had cared for the patient on a different day than did Dr. Davidson. Dr. Davidson performed surgery on the patient that the personal representative alleged was negligent, and Dr. Walker provided care for the patient following the surgery.
The surgery center in Prior moved for a summary judgment on the ground that the claims asserted in the second amended complaint did not relate back to the date of the filing of the original complaint and thus were time-barred. The trial court granted the summary-judgment motion, and the personal representative appealed. This Court affirmed the summary judgment, concluding that the claim did not relate back to the original complaint because the personal representative was seeking to add new facts and a new claim that the surgery center was vicariously liable for a different doctor on a different day from those actions that formed the basis of the claims asserted in the original complaint and the first amended complaint.
Carolyn’s clarified second amended complaint was filed after the statutory period had run; therefore, the claims against Jackson set forth in the amended complaint are time-barred unless Rule 15, Ala. R. Civ. P., applies. Under Rule *835 15(c)(2), an amendment relates back to the original complaint when “the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading .... ” Although Carolyn had timely made Jackson a party to her medical-malpractice action, for the first time in her clarified second amended complaint, she alleged that Jackson was negligent in caring for Samuel by and through its employee, Dr. Weber. The original complaint contained no allegations regarding policies and procedures relating to radiographs or any alleged breach of the standard of care. In other words, the only allegations in the original complaint were based on the actions of Dr. Sweet on December 20, 2002, and Dr. Doyan on December 22, 2002. Carolyn’s clarified second amended complaint asserting Jackson’s vicarious liability for the medical services provided by Dr. Weber does not relate back to the original complaint.

Conclusion

Dr. Weber and The Radiology Group were not proper fictitious parties within the meaning of Rule 9(h), Ala. R. Civ. P., and the statute of limitations now bars the action against them. Therefore, we reverse the judgment of the trial court denying Dr. Weber and The Radiology Group’s motion to dismiss, and we remand the cause for proceedings consistent with this opinion. The claim against Jackson set out in Carolyn’s clarified second amended complaint regarding Jackson’s vicarious liability based on its employee, Dr. Weber, is time-barred because the original complaint did not assert that Samuel’s death was the result of any action by Dr. Weber. Therefore, we reverse the judgment of the trial court denying Jackson’s motion to dismiss Carolyn’s clarified second amended complaint, and we remand the cause for proceedings consistent with this opinion.
1060001 — REVERSED AND REMANDED.
1060854 — REVERSED AND REMANDED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.