PARKER, Justice.
Mobile Infirmary Association d/b/a Mobile Infirmary Medical Center (“Mobile Infirmary”) petitions this Court for a writ of mandamus directing the Mobile Circuit Court to grant Mobile Infirmary’s motion to dismiss the wrongful-death action filed against it by Ernest Shaw, as administrator of the estate of Mary H. Shaw, deceased (“Shaw”). We grant the petition and issue the writ.

Facts and Procedural History

Mary H. Shaw, who was then 90 years old, was admitted to the emergency room at the Mobile Infirmary Medical Center on January 29, 2008. She underwent surgery, which was successful, but she developed pressure sores while she was a patient at the Center. Mary was transferred to Infirmary Health Hospital, Inc., d/b/a Infirmary Long Term Acute Care Hospital on February 20, 2008, for treatment of the pressure sores. Mary remained a patient there until she was transferred to Infirmary Health Hospital, Inc., d/b/a Infirmary West on March 22, 2008; she died there the next day.
Claudia Coleman, manager of the medical records department at Mobile Infirmary, stated in her July 21, 2010, affidavit that Mary’s medical records (several of which were clearly labeled as being records of “Mobile Infirmary Medical Center”) were mailed to Mary’s family on April 7, 2008, and that Shaw also obtained a copy of Mary’s medical records from Mobile Infirmary on September 8, 2009. Before filing this wrongful-death action and after reviewing Mary’s medical records, Shaw’s attorney contacted the attorney for Infirmary Health System, Inc. *427 (“IHS”); IHS’s attorney also represents Mobile Infirmary. Shaw’s attorney claims to have asked IHS’s attorney which entity Shaw should sue. According to Shaw’s attorney, IHS’s attorney told him that Shaw should sue IHS and that the identity of the proper parties would be sorted out later. IHS’s attorney, in an affidavit filed with the trial court, remembered the conversation differently, stating that he “never told [Shaw’s attorney] to file a lawsuit against Infirmary Health Systems, Inc. to the exclusion of any other entity” and that he did not “tell him the name of any entity that he should or should not sue.”
On December 10, 2009, Shaw filed a wrongful-death action against IHS and several fictitiously named defendants (hereinafter collectively referred to as “the defendants”), alleging that the defendants caused Mary’s death by negligently causing her injuries while she was a patient at the Medical Center and by then negligently treating those injuries while she was a patient at Infirmary Health Hospital, Inc., d/b/a Infirmary Long Term Acute Care Hospital and Infirmary Health Hospital, Inc., d/b/a Infirmary West. Along with the complaint, Shaw filed interrogatories seeking all information relevant to Mary’s treatment and care. Those interrogatories did not mention Mobile Infirmary or seek any information about the correct legal name of that entity.
IHS did not answer Shaw’s interrogatories within 45 days, as required by Rule 33(a), Ala. R. Civ. P. Shaw sent IHS additional interrogatories on March 30, 2010, specifically requesting, among other things, information regarding the “proper legal entity for the hospital commonly known as a the Mobile Infirmary Medical Center.” IHS responded on April 2, 2010, identifying Mobile Infirmary as that legal entity. On April 12, 2010, Shaw attempted to amend his complaint to substitute Mobile Infirmary as a party in place of one of the fictitiously named defendants. Mobile Infirmary filed a motion to dismiss, alleging that the two-year limitations period in the wrongful-death statute, § 6-5-410, Ala.Code 1975, had expired on March 23, 2010, before Shaw sent IHS the additional interrogatories or amended his complaint.[1] The trial court treated the motion to dismiss as a motion for a summary judgment. The trial court denied Mobile Infirmary’s motion; Mobile Infirmary then filed a motion to reconsider the denial of its motion to dismiss, which was also denied. Mobile Infirmary then petitioned this Court for a writ of mandamus.

Standard of Review

“A writ of mandamus is an extraordinary remedy, and one petitioning for it must show: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court....
“The general rule is that ‘ “a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.” ’ Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998) (quoting Ex parte Central Bank of the South, 675 So.2d 403 (Ala.1996))....
“... In a narrow class of cases involving fictitious parties and the relation-back doctrine, this Court has reviewed the merits of a trial court’s denial of a summary-judgment motion in which a defendant argued that the plaintiffs *428 claim was barred by the applicable statute of limitations. See Ex parte Snow, 764 So.2d 531 (Ala.1999) (issuing the writ and directing the trial court to enter a summary judgment in favor of the defendant); Ex parte Stover, 663 So.2d 948 (Ala.1995) (reviewing the merits of the trial court’s order denying the defendant’s motion for a summary judgment, but denying the defendant’s petition for a writ of mandamus); Ex parte FMC Corp., 599 So.2d 592 (Ala.1992) (same); Ex parte Klemawesch, 549 So.2d 62, 65 (Ala.1989) (issuing the writ and directing the trial court ‘to set aside its order denying [the defendant’s] motion to quash service or, in the alternative, to dismiss, and to enter an order granting the motion’). In Snow, Stover, FMC Corp., and Klemawesch, the plaintiff amended his or her complaint, purporting to substitute the true name of a fictitiously named defendant. In each case, the plaintiffs claim against the newly named defendant would have been barred by the applicable statute of limitations if the plaintiffs amendment did not, pursuant to Rule 15(c), Ala. R. Civ. P., relate back to the filing of the plaintiffs original complaint. As we explained in Snow, ‘[a] writ of mandamus is proper in a case such as this if the undisputed evidence shows that the plaintiff failed to act with due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue.’ 764 So.2d at 537.”
Ex parte Jackson, 780 So.2d 681, 683-84 (Ala.2000).

Discussion

At issue in this petition is whether Shaw’s amended complaint, admittedly filed after the expiration of the two-year limitations period for bringing a wrongful-death action, see § 6-5-410, Ala.Code 1975, related back to the filing of his original complaint. Because Shaw failed to use due diligence in determining the true identity of Mobile Infirmary as the fictitiously named defendant, we hold that the amended complaint did not relate back to the filing of the original complaint, and, thus, the trial court erred in denying Mobile Infirmary’s motion to dismiss.
Mary died on March 23, 2008; Shaw had two years from that date in which to file a wrongful-death action. See § 6-5-410, Ala.Code 1975 (“A personal representative may commence an action ... for the wrongful act, omission, or negligence ... whereby the death of his testator or intestate was caused.... Such action must be commenced within two years from and after the death of the testator or intestate.”). Shaw filed the amended complaint on April 12, 2010, after the two-year limitations period had expired. The determinative issue is whether that amendment relates back to the filing of the original complaint as permitted by Rules 9(h)[2] and 15(c),[3] Ala. R. Civ. P. In a case involving fictitiously named defendants, the answer to that question depends upon the plaintiffs conduct.
*429 As this Court said in Ex parte Snow, 764 So.2d 531, 537 (Ala.1999), an amendment substituting a new defendant in place of a fictitiously named defendant will relate back to the filing of the original complaint only if the plaintiff acted with “due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue.” Ignorance of the new defendant’s identity is no excuse if the plaintiff should have known the identity of that defendant when the complaint was filed:
“The requirement that the plaintiff be ignorant of the identity of the fictitiously named party has been generally explained as follows: ‘The correct test is whether the plaintiff knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously.’ Davis v. Mims, 510 So.2d 227, 229 (Ala.1987). This Court has elaborated upon the requirement that the plaintiff be ignorant of the identity of the fictitiously named party by holding that the plaintiff must substitute the named defendant for the fictitious party within a reasonable time after determining the defendant’s true identity, see Walden v. Mineral Equip. Co., 406 So.2d 385 (Ala.1981), and by holding that ‘the same policy considerations which require a plaintiff to amend his complaint within a reasonable time after learning the defendant’s true identity also require the plaintiff to proceed in a reasonably diligent manner in determining the true identity of the defendant.’ Kinard v. C.A. Kelly & Co., 468 So.2d 133, 135 (Ala.1985).”
Crawford v. Sundback, 678 So.2d 1057, 1060 (Ala.1996).
Shaw points to his interrogatories and other discovery requests as evidence of his due diligence in attempting to discover the identity of the fictitiously named defendants. However, although a lack of formal discovery will often indicate a lack of due diligence, see, e.g., Ex parte Hensel Phelps Constr. Co., 7 So.3d 999, 1004 (Ala.2008) (“Although it is true that formal discovery is not the only method of determining the identity of a fictitiously named defendant, it commonly is vital to demonstrating due diligence because it provides objective evidence of the plaintiffs case activity.”), the presence of formal discovery does not necessarily indicate the due diligence of an amending party, see, e.g., Jones v. Resorcon, Inc., 604 So.2d 370 (Ala.1992) (finding the plaintiffs discovery insufficient to satisfy due-diligence standard).
The evidence attached to Mobile Infirmary’s summary-judgment motion indicates that Shaw did not act with due diligence. When he filed the original complaint, Mary’s family had possessed her medical records for 20 months, and Shaw had possessed Mary’s medical records for at least 3 months, including various paperwork from Mobile Infirmary, which indicated that Mary had been admitted to the Medical Center, had undergone surgery there, and had been treated there following her surgery. A reasonably diligent plaintiff possessing that information should have at least attempted to identify the corporation doing business as Mobile Infirmary Medical Center and include it as a defendant. See Fulmer v. Clark Equip. Co., 654 So.2d 45, 46 (Ala.1995) (holding that where plaintiff knew the allegedly defective forklift was manufactured by “Clark” and possessed forklift manuals providing Clark’s name but did not attempt to amend the complaint until after the limitations period had run, the plaintiff “did not act diligently in attempting to learn Clark Equipment’s identity”). As this Court has said,
*430 “[ijf the plaintiff knows the identity of the fictitiously named parties or possesses sufficient facts to lead to the discovery of their identity at the time of the filing of the complaint, relation back under fictitious party practice is not permitted and the running of the limitations period is not tolled.”
Clay v. Walden Joint Venture, 611 So.2d 254, 256 (Ala.1992).
Shaw argues that Mobile Infirmary is not prejudiced by his delay in identifying it as a defendant because, he says, Mobile Infirmary’s counsel received notice of the wrongful-death action in his role as counsel for IHS. However, prejudice becomes a consideration only when an amendment would otherwise relate back to the time of filing; lack of prejudice to the non-amending party will not make an otherwise improper relation back proper, where due diligence by the amending party is lacking. See Wallace v. Doege, 484 So.2d 404, 406 (Ala.1986) (“The relation-back principle will not be applied when there has been an inordinate delay between the time the plaintiff learned the fictitious party’s true name and the time of the actual substitution, if the delay prejudiced the defendant.”).
Shaw also argues that Mobile Infirmary’s petition for the writ of mandamus should be denied because, he says, Mobile Infirmary comes to this Court with unclean hands. See State Bd. of Admin. v. Roquemore, 218 Ala. 120, 124, 117 So. 757, 760 (1928) (“[T]he petitioner must come into court with clean hands, and any fraudulent, dishonest, or inequitable conduct on his part in respect of the matter at issue invites or requires a denial of the writ [of mandamus].”). Shaw points to the alleged inadequacy of Mobile Infirmary’s filings with the Alabama Secretary of State, including its failure to register the name “Mobile Infirmary Medical Center,” as well as its failure to provide a registered agent and office. Shaw argues that these failures violated § 10-2B-5.01, Ala.Code 1975[4] (“Each corporation must continuously maintain in this state: (1) A registered office that may be the same as any of its places of business; and (2) A registered agent....”). He argues that this alleged statutory noncompliance, combined with the alleged unfulfilled promises of IHS’s attorney to notify Shaw of the identity of the proper defendants in a timely manner and the unexcused delay in responding to Shaw’s original interrogatories, made Shaw’s due-diligence attempts to discover Mobile Infirmary’s identity unavailing and invited error. Shaw cites Mississippi Valley Title Insurance Co. v. Hooper, 707 So.2d 209, 214 n. 5 (Ala.1997) (quoting Slaton v. State, 680 So.2d 879, 892 (Ala.Crim.App.1995)), in which this Court stated that “a party ‘cannot by his own voluntary conduct invite error and then seek to profit thereby.’ ” As previously noted, however, Shaw failed to include in his original interrogatories any inquiry about the legal entity doing business as Mobile Infirmary Medical Center; therefore, even if IHS had responded to those interrogatories in a timely manner, Shaw would not have had any new information on which to amend his complaint to add Mobile Infirmary as a defendant in place of one of the fictitiously named defendants.
Shaw argues that his attorney searched the Secretary of State’s Web site in an attempt to determine Mobile Infirmary’s identity; that his attorney contacted IHS’s attorney for the same purpose; and that *431 his attorney attempted to discern the identity of the correct defendants through the discovery process. However, the complaint does not allege that Mobile Infirmary is a subsidiary of IHS or an otherwise related entity of IHS, the only named defendant. Nor is Mobile Infirmary even mentioned in Shaw’s initial discovery. Due diligence may take different forms, but this clearly was not sufficient. See Crowl v. Kayo Oil Co., 848 So.2d 930, 941 (2002) (plaintiff “did not exercise due diligence” when he relied on interrogatories to determine the identity of defendants and those interrogatories were never answered).
Finally, a party is responsible for knowing the contents of medical records in its possession. See Marsh v. Wenzel, 732 So.2d 985 (Ala.1998); Weber v. Freeman, 3 So.3d 825 (2008). In both Marsh and Weber, this Court held that the relation-back doctrine was not applicable when, before the limitations period expired, the plaintiffs in each case knew that the omitted defendant was one of the treating physicians. This was so, even though it was only after the limitations period expired that the plaintiffs discovered that they had a cause of action against the defendant physicians. In this case, Shaw and his attorney reviewed Mary’s medical records before filing the wrongful-death action. Those records were clearly marked as being the records of “Mobile Infirmary Medical Center.” Mobile Infirmary argues that this was sufficient to give Shaw knowledge of Mobile Infirmary’s identity.
Shaw argues that Oliver v. Woodward, 824 So.2d 693 (Ala.2001), is the more applicable precedent. In Oliver, the patient, Oliver, knew when she filed her complaint, based on her medical records, that Dr. Woodward was one of the doctors present in the emergency room at the time the treatment that harmed her was authorized. However, Oliver was not able to determine that Dr. Woodward was the doctor who authorized the harmful treatment until after the limitations period had expired. 824 So.2d at 698. This Court held that the amended complaint did relate back to the original complaint because Oliver had “diligently and reasonably” attempted to verify which doctor of those present in the emergency room had authorized the harmful treatment. This Court rejected Dr. Woodward’s argument that Oliver should have sued all the doctors present rather than waiting to identify him as the responsible party, noting that “substitution of Dr. Woodward and the other emergency-room doctor for fictitious defendants without a reasonable factual basis or a substantial justification for the substitution would have subjected Oliver to sanctions under Rule 11, Ala. R. Civ. P., and the Alabama Litigation Accountability Act.” 824 So.2d at 699. Similarly, Shaw argues, he knew that Mobile Infirmary Association was an IHS entity but did not know that Mobile Infirmary Association was doing business as Mobile Infirmary Medical Center and therefore potentially liable for Mary’s alleged wrongful death.
Like Oliver, Shaw knew there were multiple potential defendants in this case. Unlike Oliver, however, Shaw knew from Mary’s medical records that Mary had been in the care of an entity doing business as Mobile Infirmary Medical Center at the time she suffered the injuries that led to her death. Shaw therefore had a reasonable factual basis on which to name Mobile Infirmary Medical Center as a defendant in this wrongful-death action and later amend his complaint to reflect the correct name of the appropriate legal entity. Therefore, because Shaw did not act with due diligence in identifying Mobile Infirmary as the fictitiously named party in the original complaint, his amended complaint does not relate back to the time *432 of filing of the original complaint, and his wrongful-death action against Mobile Infirmary is barred by the expiration of the two-year limitations period in the wrongful-death statute.

Conclusion

Based on the foregoing, we conclude that Mobile Infirmary has established a clear legal right to have Shaw’s wrongful-death action against it dismissed. Accordingly, we grant the petition and issue the writ directing the Mobile Circuit Court to enter a summary judgment in favor of Mobile Infirmary.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and STUART, SHAW, and WISE, JJ., concur.

. Only Mobile Infirmary has filed a motion to dismiss; no motion to dismiss was filed regarding Shaw’s wrongful-death action against IHS.

. Rule 9(h), Ala. R. Civ. P., provides:
“When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”

. Rule 15(c), Ala. R. Civ. P., provides:
"An amendment of a pleading relates back to the date of the original pleading when
"(4) relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h).”

. We note that this provision was repealed effective January 1, 2011, by Act No. 2009-513, Ala. Acts 2009.