WOODALL, Justice.
Alanna Nail, Paul Watson, and Gennie Farragher, all registered nurses (hereinafter sometimes referred to collectively as “the nurses”), petition this Court for a writ of mandamus directing the Calhoun Circuit Court to vacate its order denying the summary-judgment motion they filed, which raised a statute-of-limitations defense. We deny the petition.

I. Factual and Procedural Background

According to the complaint filed in this case, George Dulin was admitted to the Northeast Alabama Regional Medical Center (“the Center”) in May 2005 for treatment of “crush injuries to his chest.” There, “he underwent a tracheostomy for long term airway management.” On the morning of June 3, 2005, Dulin’s tracheos-tomy tube allegedly became dislodged during a bath administered by the nursing staff, resulting in the loss of oxygen for an undetermined period. He allegedly suffered brain damage as the result of oxygen deprivation.
One month later, Vivian Dulin, George’s wife, obtained and reviewed the hospital records. Included in the records was a “Cardiopulmonary Pulmonary Arrest Flow Sheet” (“the flow sheet”) dated June 3, 2005. It purported to identify, by handwritten entries, eight members of a “Code Team” involved in the incident. Four of the members were designated by an initial, followed by a last name, which was, in turn, followed by the designation “RN.” The other four members were generally listed only by first name, followed by “RT” (respiratory therapist).
The names on the flow sheet are obscure, at best; little can be made out with any certainty. One of the more legible of the RNs’ names is the fourth name from the top, which appears to be “P. Watkins.” Another initial appears to be an “A.”
The hospital records also included a “Nurses’ Notes Extension” (“the chart”), which gave a moment-by-moment chronicle of the series of events that occurred during the tube displacement and reintu-bation. Each entry on the chart was followed by a signature closely resembling the first handwritten entry on the flow sheet, which possibly began with the letter “A.”
On May 2, 2007, the Dulins commenced a medical-malpractice action against the Center and 17 fictitiously named defendants. The complaint averred, in pertinent part:
“On or about June 3, 2005, when nurses and/or other employees of the [Center] were changing [Mr. Dulin’s] position during a bed bath, [Mr. Dulin’s] tra-cheostomy tube became dislodged and he had a code arrest.... [The Dulins] aver that the nurses and/or other employees of the [Center] that were attending Mr. Dulin at the time his tra-cheostomy tube became dislodged, were agents, servants, or employees of the [Center], and were working within the line and scope of their employment.
“10. [The Dulins] aver that said nurses and/or other employees of [the Center] and fictitious defendants] 1 *127 through 17 negligently failed to provide a proper level of assistance to Mr. Dulin while in the process of bathing him and/or changing his position. The negligent failure to provide such proper assistance proximately resulted in the injuries and damages sustained by the [Dulins].
“11. [The Dulins] further aver that [the Center], through its employees and/or agents and fictitious defendants 1 through 17, negligently failed to properly secure [Mr. Dulin’s] tracheostomy tube prior to attempting to bathe him or change his position, and as a proximate consequence of this negligent failure, the [Dulins] were caused to sustain ... injuries and damages....
[[Image here]]
“14. As a proximate consequence of the aforesaid negligent conduct of the defendant Northeast Alabama Regional Medical Center and fictitious party defendants 1 through 17 ..., plaintiff George Dulin was injured and damaged. ...”
The fictitiously named defendants were defined, in pertinent part, as
“numbers 2, 3, 4 and 5 being that entity or individual or those entities or individuals which or who attempted to turn or change [Mr. Dulin’s] position on or about June 3, 2005 as set forth in the complaint; ... numbers 6, 7 and 8 whether singular or plural, being that individual or individuals who undertook to provide medical services and/or care and/or assistance to plaintiff George Du-lin on the occasion made the basis of this lawsuit, being negligence, wantonness, breach of contract or other actionable conduct which contributed to cause [Mr. Dulin’s] injuries; ... numbers 9, 10 and 11 being that person or entity which caused or contributed to cause the injuries made the basis of this suit; [and] Defendant numbers 12, 13 and 14 being the nurses and/or other employees of defendant Northeast Alabama Regional Medical Center that were attending Mr. Dulin at the time his tracheostomy tube became dislodged.... ”
Accompanying the complaint was a set of interrogatories requesting, among other things, “the names of all individuals who were assisting or attending to [Mr. Dulin] at the time [his] tracheostomy tube became dislodged.” On September 10, 2007, the Center answered the interrogatories, stating that the individuals were Alanna Nail, Paul Watson, and Gennie Farragher.
On October 26, 2007, the Dulins amended their complaint to substitute, pursuant to Rule 9(h), Ala. R. Civ. P., Nail, Watson, and Farragher for the fictitiously named defendants 6, 7, 8, 9, 10, and 11. More specifically, the amended complaint averred that Nail, Watson, and Farragher were the individuals who had negligently or wantonly undertaken “to provide medical services and/or care and/or assistance to plaintiff George Dulin on the occasion made the basis of [the] lawsuit.”
Subsequently, Nail, Watson, and Far-ragher moved for a summary judgment on the ground that the amended complaint, which purported to substitute their names for certain fictitiously named defendants, was filed more than two years after the alleged incident on June 3, 2005, and did not relate back to the filing of the original complaint, because, they argued, the Du-lins failed to exercise “due diligence” in ascertaining the nurses’ identities. They contended that the claims against them were, therefore, barred by the applicable two-year statute of limitations. See Ala. Code 1975, § 6-5-482.
In support of their motion, the nurses presented the deposition testimony of Vivian Dulin and excerpts from George Dulin’s *128 hospital records relating to the incident made the basis of these claims. Mrs. Du-lin stated that she received a telephone call from the Center on the morning of the incident, informing her that there was a “problem” and that she should come to the Center. When she arrived at George’s hospital room, she found a nurse named “Alanna” working in the room, who told her that they “had a mess” and that George’s tracheostomy tube had become dislodged. Susan Green was the nurse in charge of the intensive-care unit at the Center. According to Mrs. Dulin, she and Green live near one another, and have occasionally encountered one another in the neighborhood since the incident.
In their summary-judgment motion, the nurses argued that “the Dulins ... were on notice of a list of nurses in the room at the time of the [incident] (even if they could not read all of the names or needed help identifying the full names).” (Emphasis added.) The Dulins, however, contended that “the documents specifically relating to the treatment at issue in this case are illegible.” The trial court denied the nurses’ motion, and they filed this petition.

II. Discussion

' “Rules 9(h) and 15(c), [Ala.] R. Civ. P., govern the relation back principles regarding substitution of an identified party for a fictitiously designated party after the statutory period of limitations as to the claims against that party has run.” Ex parte Klemawesch, 549 So.2d 62, 63 (Ala.1989).
Rule 9(h) provides:
“(h) Fictitious parties. When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”
As this Court has explained:
“ ‘This Court has stated on numerous occasions that in order to invoke the relation-back principles of Rule 9(h), that is, in order for the amended complaint with the defendant’s true name to relate back to the original complaint with the fictitious name, the plaintiff must establish (1) that the plaintiff was ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time the complaint was filed that the party subsequently named was in fact the party intended to be sued, Columbia Engineering International, Ltd. v. Espey, 429 So.2d 955 (Ala.1983); and (2) that the plaintiff used due diligence to discover the defendant’s true identity before filing the original complaint, Fulmer v. Clark Equipment Co., 654 So.2d 45 (Ala.1995).’
“The purpose of Rule 9(h) is to toll the applicable statute of limitations when the plaintiff has diligently pursued the identity of, but has been unable to identify, certain defendants. The fictitious name serves as a placeholder for the defendant, and Rule 15(c) [, Ala. R. Civ. P.,] allows the claim against the substituted defendant to relate back to the date of the original complaint. Toomey v. Foxboro Co., 528 So.2d 302 (Ala.1988).”
Weber v. Freeman, 3 So.3d 825, 831-32 (Ala.2008) (quoting Ex parte Atkinson, 976 So.2d 1001, 1003 (Ala.2007) (emphasis added)).
“The due-diligence standard, as stated in Davis v. Mims, 510 So.2d 227, 229 (Ala.1987), ‘is whether the plaintiff knew, or should have known or was on notice, that the substituted defendants were in fact the parties described ficti *129 tiously.’ ” Ex parte Griffin, 4 So.3d 430, 436 (Ala.2008) (emphasis added). “ ‘Diligence’ is a relative term, and what is due diligence must be determined by the circumstances of each case.” Brown & Flowers v. Central of Georgia Ry., 197 Ala. 71, 75, 72 So. 366, 367 (1916).
“ ‘This Court’s standard of review applicable to a petition for a writ of mandamus is well settled:
“ ‘ “ ‘Mandamus is an extraordinary remedy and requires a showing that there is “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ”” ”
Ex parte Bowman, 986 So.2d 1152, 1156 (Ala.2007). Further, although a petition for a writ of mandamus is the proper vehicle by which to seek review of the trial court’s denial of a summary-judgment motion on a statute-of-limitations ground in the context of fictitious-party practice, the writ will issue “‘only if undisputed evidence show[s] that the plaintiffs had failed to act with due diligence in identifying [the fictitiously named defendants] as the partfies] intended to be sued.’ ” Ex parte Stover, 663 So.2d 948, 952 (Ala.1995) (quoting Ex parte FMC Corp., 599 So.2d 592, 595 (Ala.1992) (emphasis added)).
The nurses contend that Rule 9(h), Ala. R. Civ. P., does not aid the Dulins because, they insist, the Dulins were “on notice of [the nurses’] identities by way of the medical records in [the Dulins’] possession.” Petition, at 4. They concede, however, that the medical records contain only the last names of the nurses and that two of those names were misspelled.
In that connection, Farragher’s name was apparently spelled without the “h.” More significantly, “Watson” appeared as “Watkins,” which, it should be noted, is an entirely different name than Watson. Additionally, it is clear to this Court that the name “Nail” cannot reasonably be made out from the flow sheet or the chart— except in the hindsight resulting from the Center’s response to the Dulins’ interrogatories.
Indeed, the nurses argue that, “even without those records [,] which [the Dulins] now contend[] were not clear or legible, [the Dulins] failed to meet [their] duty to exercise due diligence to inquire and learn the identities of the nurses prior to filing suit.” Petition, at 4 (emphasis added). Thus, the nurses’ mainstay argument is that, regardless of whether the hospital records placed the Dulins “on notice” of anything, the Dulins were dilatory — as a matter of law — in relying on formal discovery to gain the identities of the attending nurses. We disagree.
Although “[t]he conducting of formal discovery does not necessarily prove due diligence,” Ex parte Tate & Lyle Sucralose, Inc., 81 So.3d 1217, 1221 (Ala.2011), “it commonly is vital to demonstrating due diligence because it provides objective evidence of the plaintiffs case activity.” Ex parte Hensel Phelps Constr. Co., 7 So.3d 999, 1004 (Ala.2008).
The nurses rely specifically on Ex parte Mobile Infirmary Ass’n, 74 So.3d 424 (Ala. 2011); Ex parte Ismail, 78 So.3d 399 (Ala. 2011); and Ex parte Klemawesch, supra. Those cases are clearly distinguishable.
The issue in Ex parte Mobile Infirmary, for example, involved the proper legal name of the entity doing business as the Mobile Infirmary Medical Center. Mary H. Shaw was undisputedly admitted to the Mobile Infirmary Medical Center on January 29, 2008, 74 So.3d at 426, and, during her treatment there, she developed “pressure sores.” Id. She was transferred for *130 treatment of the pressure sores to a facility operated by Infirmary Health Hospital, Inc., d/b/a Infirmary Long Term Acute Care Hospital, and then to a facility operated by Infirmary Health Hospital, Inc., d/b/a Infirmary West, where she died on March 23, 2008. Id. On April 7, 2008, Shaw’s medical records were mailed to her family. Appearing throughout the records as the facility where treatment was first provided were the words, “Mobile Infirmary Medical Center.”
On December 10, 2009, Ernest Shaw, as administrator of the estate of Mary Shaw, filed a complaint, naming as a defendant “Infirmary Health Systems, Inc., doing business as Mobile Infirmary West and as Infirmary West Long Term Acute Care Center.” The complaint also listed fictitiously named defendant “A,” described as that “person[ ], firm[ ], or corporation ] or other legal entit[y] who negligently failed to provide competent and timely medical care, treatment, evaluation, diagnosis, supervision, facilities and equipment in the treatment of Mary H. Shaw.” Although the body of the complaint contained nine paragraphs of facts alleging acts or omissions occurring at the place of Ms. Shaw’s first admission, it never mentioned Mobile Infirmary Medical Center by name. Instead, it referred to that entity as “the Mobile Infirmary Emergency Room,” and as “the hospital.”
Accompanying the complaint were interrogatories. However, none of the interrogatories sought information regarding the “correct legal name” of the Mobile Infirmary Medical Center. 74 So.3d at 427. On March 30, 2010, after the statutory limitations period for a wrongful-death action had expired, Shaw supplemented his interrogatories with a request for “information regarding the ‘proper legal entity for the hospital commonly known as the Mobile Infirmary Medical Center.’ ” Id. Infirmary Health Systems, Inc., responded on April 2, 2010, and on April 12, 2010, Shaw amended his complaint to substitute Mobile Infirmary Association d/b/a Mobile Infirmary Medical Center (hereinafter referred to as “the Infirmary”) for fictitiously named defendant “A.”
The Infirmary petitioned this Court for a writ of mandamus vacating the trial court’s denial of its motion to dismiss the claims against it as time-barred. This Court granted the petition on the ground that Shaw had not acted with due diligence in discovering the identity of fictitiously named defendant “A.” 74 So.3d at 429.
The cases are clearly distinguishable. Despite the fact that the complaint in Ex parte Mobile Infirmary had alleged a basis for a cause of action against “the Mobile Infirmary Emergency Room” or “the hospital,” the plaintiff neither used, nor formally inquired about, the legal name of that entity until after the limitations period had expired. In other words, the Infirmary and its alleged role in the decedent’s demise were definitely known, notwithstanding some alleged ambiguity as to its formal designation. By contrast, the nurses’ identities were unknown at the time the complaint was filed. Indeed, there is little comparison between the notoriety and visibility of a large hospital and that of the individual members of its nursing staff. Here, interrogatories were propounded before the expiration of the limitations period; in Ex parte Mobile Infirmary, the limitations period had expired before relevant interrogatories were issued.
Ex parte Ismail and Ex parte Klemaw-esch are even less apposite. In Ismail, for example, it was undisputed that the plaintiffs, one of whom was allegedly injured while a patient at Highlands Medical Center, actually knew, based on medical records in their possession before filing their complaint, that Dr. Younus Ismail had *131 been one of two treating physicians. 78 So.Sd at 407. Nevertheless, they did not attempt to substitute Dr. Ismail for a fictitiously named party until more than two years after the expiration of the limitations period. 78 So.3d at 403. Thus, the issue in that case was not one of identity, but, rather, the extent of involvement the physician, whose identity was known, had with the patient. Essentially, in other words, the plaintiffs were improperly, id. at 408, attempting to use Rule 9(h) to gain “additional time beyond the statutorily prescribed period within which to formulate causes of action.” Columbia Eng’g Int’l, Ltd. v. Espey, 429 So.2d 955, 959 (Ala.1983).[1] The issue in this case is, of course, one of true identity: who were the persons engaged in the procedure during which George Dulin was allegedly injured?
In Ex parte Klemawesch, the plaintiff “had been on notice of an unidentified [physician’s] signature below a progress note contained within medical records,” 549 So.2d at 64, that had been in her possession since before she filed her complaint. However, she had never filed a single interrogatory and, indeed, had waited 27 months after the complaint was filed to initiate any discovery at all. Id. Thus, her attempt to substitute Dr. Stephen Kle-mawesch for a fictitiously named party some 10 months after the expiration of the limitations period was disallowed. In this case, the Dulins initiated formal discovery simultaneously with the commencement of their action and substituted the nurses’ names less than five months after expiration of the limitations period. These cases do not aid the nurses.
As we noted before, the nurses insist that due diligence required the Dulins to have pursued some avenue of inquiry, aside from formal discovery. Although they concede that “[d]etective work was not required,” the nurses’ reply brief, at 14, the nurses contend that the Dulins should have attempted to elicit information from Susan Green, with whom Mrs. Dulin allegedly had a “friendly relationship,” or from “hospital administration.” Id.
We disagree. “Due diligence means ordinary, rather than extraordinary, diligence.” United States v. Walker, 546 F.Supp. 805, 811 (D.C.Hawai’i 1982) (emphasis added); see also State v. Gonzales, 151 Ohio App.3d 160, 171, 783 N.E.2d 903, 911-12 (2002). Short of what would amount to “detective work,” the adversarial process renders the nurses’ contentions unrealistic. See Oliver v. Woodward, 824 So.2d 693, 699 (Ala.2001) (amendment of the complaint after two and one-half years to substitute the name of the emergency-room physician who read an X-ray critical to the plaintiffs treatment was not untimely, where the identification of the physician’s name resulted only from extensive formal discovery).
Under the circumstances of this case, including (1) the Dulins’ prompt acquisition of the medical records, (2) the state of the names of the nurses in the room with George Dulin in his medical records, and (3) the promptness of discovery and of the substitution, we cannot say, as a matter of law, that the Dulins failed to exercise due diligence in substituting the nurses for the fictitiously named defendants. Otherwise stated, the nurses have not produced undisputed evidence of the absence of due diligence on the Dulins’ part. Consequently, they have failed to show that they are *132 entitled to the writ of mandamus they seek.

III. Conclusion

For the above-stated reasons, the nurses have not shown a clear, legal right to a writ of mandamus directing the Calhoun Circuit Court to vacate its order denying their summary-judgment motion. The petition is, therefore, denied.
PETITION DENIED.
MALONE, C.J., and BOLIN and MAIN, JJ., concur.
MURDOCK, J., concurs in the result.

. See Harmon v. Blackwood, 623 So.2d 726, 727 (Ala.1993) ("Rule 9(h) does not ... excuse the plaintiff's ignorance of a cause of action against the fictitiously named defendant; it only excuses, under certain circumstances, the ignorance of the name of the party against whom the plaintiff has a cause of action.” (emphasis added)).