SHAW, Justice.
General Motors of Canada Limited (“GM Canada”) petitions this Court for a writ of mandamus directing the Choctaw Circuit Court to enter a summary judgment in its favor on the ground that the plaintiffs substitution of GM Canada for a fictitiously named defendant was made after the expiration of the applicable statute of limitations and does not relate back to the filing of the original petition. We grant the petition and issue the writ.

Facts and Procedural History

The complaint in the underlying action was filed on April 6, 2009. It alleged that the plaintiff, Gerardo Poole, was injured in a motor-vehicle accident that occurred on April 11, 2007. Poole sought damages on a products-liability claim against General Motors Corporation n/k/a Motors Liquidation Company (“MLC”), the company that allegedly designed, tested, made parts of, and distributed the 2004 Chevrolet Impala automobile that Poole was operating at the time of the accident, and Stewart Motor Company, the dealership that sold the vehicle to Poole’s mother.[1] Poole’s complaint also included fictitiously named defendants.[2]
*238 On June 10, 2009 — two months after the expiration of the two-year statutory limitations period — Poole sought leave from the trial court to amend his original complaint to substitute GM Canada for the fictitiously named defendants. In support of that request, Poole’s counsel submitted affidavit testimony indicating that he had been diligently investigating in order to identify all potentially responsible parties and had, on June 10, 2009, learned for the first time that the vehicle had been manufactured by GM Canada.[3] The trial court granted Poole’s motion, and, on June 15, 2009, Poole filed an amendment substituting GM Canada for the fictitiously named defendants.
GM Canada filed an answer and raised as an affirmative defense that Poole’s claims were barred by the applicable statute of limitations. Thereafter, GM Canada sought a summary judgment in its favor on that ground. Specifically, it argued that it was added as a party after the two-year statute of limitations had expired and that its substitution as a party did not “relate back” to the date the original complaint was filed. Following a hearing, the trial court denied GM Canada’s motion. GM Canada then petitioned this Court for a writ of mandamus.

Standard of Review

This Court will issue a writ of mandamus when the petitioner demonstrates: “(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.” Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001). This Court generally does not review by writ of mandamus a trial court’s decision denying a motion for a summary judgment; however, an exception exists in situations like the one before us:
“ ‘... In a narrow class of cases involving fictitious parties and the relation-back doctrine, this Court has reviewed the merits of a trial court’s denial of a summary-judgment motion in which a defendant argued that the plaintiffs claim was barred by the applicable statute of limitations. See Ex parte Snow, 764 So.2d 531 (Ala.1999) (issuing the writ and directing the trial court to enter a summary judgment in favor of the defendant); Ex parte Stover, 663 So.2d 948 (Ala.1995) (reviewing the merits of the trial court’s order denying the defendant’s motion for a summary judgment, but denying the defendant’s petition for a writ of mandamus); Ex parte FMC Corp., 599 So.2d 592 (Ala.1992) (same); Ex parte Klemawesch, 549 So.2d 62, 65 (Ala.1989) (issuing the writ and directing the trial court “to set aside its order denying [the defendant’s] motion to quash service or, in the alternative, to dismiss, and to enter an order granting the motion”).... ’
“Ex parte Jackson, 780 So.2d 681, [684] (Ala.2000).”
Ex parte Mobile Infirmary Ass’n, 74 So.3d 424, 427-28 (Ala.2011).

Discussion

The parties do not dispute that Poole’s claims are covered by the two-year statute *239 of limitations found in Ala.Code 1975, § 6-2-38(0-[4] Poole was injured on April 11, 2007, and his original complaint was timely filed on April 6, 2009. It is undisputed that on June 10, 2009, when Poole sought leave to add GM Canada, the two-year limitations period had expired.
Rule 9(h), Ala. R. Civ. P., provides a mechanism by which a party who is “ignorant of the name of an opposing party” may designate that party by a fictitious name. When the opposing party’s true name is later discovered, the party may amend the pleadings to substitute that true name.[5] Under Rule 15(c)(4), Ala. R. Civ. P., such an amendment “relates back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h).” However, the relation-back principle applies only when the plaintiff “is ignorant of the name of an opposing party.” Rule 9(h); Harmon v. Blackwood, 623 So.2d 726, 727 (Ala.1993) (“In order to invoke the relation-back principles of Rule 9(h) and Rule 15(c), a plaintiff must ... be ignorant of the identity of that defendant....”); Marsh v. Wenzel, 732 So.2d 985 (Ala.1998).
“ ‘The requirement that the plaintiff be ignorant of the identity of the fictitiously named party has been generally explained as follows: “The correct test is whether the plaintiff knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously.” Davis v. Mims, 510 So.2d 227, 229 (Ala.1987).
“Crawford v. Sundback, 678 So.2d 1057, 1060 (Ala.1996).”
Mobile Infirmary, 74 So.3d at 429 (emphasis added). Thus,
“ ‘[i]f the plaintiff knows the identity of the fictitiously named parties or possesses sufficient facts to lead to the discovery of their identity at the time of the filing of the complaint, relation back under fictitious party practice is not permitted and the running of the limitations period is not tolled.’ ”
74 So.3d at 430 (quoting Clay v. Walden Joint Venture, 611 So.2d 254, 256 (Ala. 1992) (emphasis added)).
GM Canada contends that Poole did not act with due diligence in attempting to discover its identity because, it argues, Poole and/or his counsel of record should have known that GM Canada manufactured and/or assembled, at least in part, the subject vehicle. Specifically, GM Canada notes that, pursuant to the Code of Federal Regulations, see 49 C.F.R. § 567 (2000), it was required to affix a label to the driver’s door area of the Impala stating its name as the manufacturer of the vehicle. In its summary-judgment filings below, GM Canada provided a photograph of the door of the vehicle depicting a clearly legible label that indicated that the motor vehicle was “MFD BY GENERAL MOTORS OF CANADA LTD.” GM Canada thus argues that Poole had sufficient and readily available facts — via the door label — to lead to the discovery of its identity. We agree.
*240 In Ex parte Mobile Infirmary, supra, the plaintiff, Shaw, attempted to file a wrongful-death action against several hospitals who had treated the decedent. Shaw filed the action against an entity called Infirmary Health System, Inc. Later, after the statutory limitations period had run, Shaw attempted to substitute Mobile Infirmary Association d/b/a Mobile Infirmary Medical Center (“Mobile Infirmary”) for a fictitiously named defendant. In addressing whether this substitution related back to the filing of the original complaint, we stated:
“As this Court said in Ex parte Snow, 764 So.2d 531, 537 (Ala.1999), an amendment substituting a new defendant in place of a fictitiously named defendant will relate back to the filing of the original complaint only if the plaintiff acted with ‘due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue.’ Ignorance of the new defendant’s identity is no excuse if the plaintiff should have known the identity of that defendant when the complaint was filed....
[[Image here]]
“The evidence attached to Mobile Infirmary’s summary-judgment motion indicates that Shaw did not act with due diligence. When he filed the original complaint, [the decedent’s] family had possessed her medical records for 20 months, and Shaw had possessed [the decedent’s] medical records for at least 3 months, including various paperwork from Mobile Infirmary, which indicated that [the decedent] had been admitted to the Medical Center, had undergone surgery there, and had been treated there following her surgery. A reasonably diligent plaintiff possessing that information should have at least attempted to identify the corporation doing business as Mobile Infirmary Medical Center and include it as a defendant. See Fulmer v. Clark Equip. Co., 654 So.2d 45, 46 (Ala.1995) (holding that where plaintiff knew the allegedly defective forklift was manufactured by ‘Clark’ and possessed forklift manuals providing Clark’s name but did not attempt to amend the complaint until after the limitations period had run, the plaintiff ‘did not act diligently in attempting to learn Clark Equipment’s identity[5]). As this Court has said,
“ ‘[i]f the plaintiff knows the identity of the fictitiously named parties or possesses sufficient facts to lead to the discovery of their identity at the time of the filing of the complaint, relation back under fictitious party practice is not permitted and the running of the limitations period is not tolled.’
“Clay v. Walden Joint Venture, 611 So.2d 254, 256 (Ala.1992).”
74 So.3d at 429-30 (emphasis added). See also Ex parte Nationwide Ins. Co., 991 So.2d 1287, 1291 (Ala.2008) (finding that a substitution of a party for a fictitiously named party did not relate back where the plaintiff could have discovered an insurer’s identity by, among other things, examining her policy or reviewing an accident report), and Marsh v. Wenzel, 732 So.2d 985, 990 (Ala.1998) (holding that one could not reasonably conclude that a plaintiff was ignorant of the name of a pathologist when the pathologist’s name was set forth in her medical records).
Like the plaintiff in Mobile Infirmary, Poole had a source of information that would have led him to the identity of the manufacturer of the Impala — that vehicle’s legally required manufacturer’s identification label. Poole argues, however, that he nevertheless acted with due diligence in investigating and discovering GM Canada’s identity. Specifically, he argues that his counsel of record had assumed representa *241 tion approximately one month before the filing of the original complaint, and that counsel did not have access to the vehicle, which, he says, was in the possession of his prior counsel.[6]
The purported lack of possession of an allegedly defective product that is the subject of a products-liability action, this Court has previously held, does not necessarily excuse the failure to examine it to learn its manufacturer. In Jones v. Resor-con, Inc., 604 So.2d 370 (Ala.1992), the plaintiff, Jones, was injured at his place of employment, USX, by a blower fan. He attempted to initiate a products-liability action against the manufacturer of the fan; after the statute of limitations had run, Jones discovered the name of, and attempted to substitute, the actual manufacturer of the fan, Resorcon, Inc., as a party for a fictitiously named defendant.
This Court held that Jones had failed to exercise due diligence in discovering Re-sorcon’s identity. Specifically, the blower fan in question was marked with an identification plate indicating that Resorcon was the manufacturer. Jones’s counsel had requested from USX the opportunity to inspect the fan to determine the manufacturer, but his request had been denied. We held that the failure of Jones’s counsel to do more to inspect the fan to discover the name of the manufacturer indicated a lack of due diligence:
“It is relevant to the question of due diligence that an inspection of the fan would almost certainly be necessary to maintain the product liability action against any defendant. If Jones’s assertions that USX refused access are true, then due diligence would have required an attempt to obtain a court-ordered inspection.”
Jones, 604 So.2d at 373. Thus, despite the fact that the information in question — the identity of the manufacturer of the fan as disclosed on the identification plate — was held in the hands of a noncooperative third party, due diligence required that Jones act to inspect the allegedly defective product and to discover that information. See also Fulmer v. Clark Equip. Co., 654 So.2d 45, 46 (Ala.1995) (holding that the plaintiff failed to exercise due diligence to learn the identity of a forklift manufacturer because, among other things, “Clark Equipment forklifts have their names clearly listed on the nameplate_”).
In the instant case, unlike Jones, the information needed by Poole — the identification of the manufacturer of the motor vehicle as stated on the vehicle — was actually in the possession of his own agents or his family. There is no allegation that either Poole or his subsequent counsel was denied access to the motor vehicle; instead, Poole’s counsel stated in an affidavit that no one acted to “physically inspect the vehicle prior to filing the lawsuit.” Further, if Poole had been denied access to the Impala, under Jones, due diligence would have required him to seek a court order to inspect it.
Poole contends that MLC’s answer “misled Plaintiffs Counsel to believe [MLC] was in fact the primary manufacturer.... ” Poole’s brief, at 18.[7] However, we see nothing misleading in MLC’s answer, in *242 which it “admit[ted] that it designed, tested, engineered, in part, manufactured, in part, marketed and sold to authorized distributors the subject 2004 Chevrolet Impala.” MLC’s answer was filed after the expiration of the applicable limitations period and, as the emphasized portions above indicate, suggests that MLC acknowledged only that it was partially responsible for the vehicle’s manufacture. It does not support the belief that MLC accepted full — or even primary — responsibility for the manufacture of the alleged defective vehicle, as it appears to explicitly state that some additional party was responsible for other parts of the design, testing, manufacturing, and marketing process.[8]
Poole, citing Ex parte Nail, 111 So.3d 125 (Ala.2012), appears to contend that an inspection of the vehicle for manufacturing information before filing the complaint would have amounted to more than due diligence.[9] However, this case presents none of the legibility issues requiring extensive formal discovery and/or “ ‘detective work’ ” as was the case in Nail or in Oliver v. Woodward, 824 So.2d 693, 699 (Ala. 2001). Instead, as GM Canada argues, Poole “could have discovered [GM Canada’s] identity ... simply by examining [the vehicle].” Ex parte Nationwide Ins. Co., 991 So.2d 1287, 1291 (2008). Here, nothing prevented Poole’s identification of GM Canada as a defendant other than his failure to conduct an inspection of the allegedly defective vehicle.
Because the label on the vehicle, which was required by law, was conspicuous, legible, and in the possession of Poole’s agents or his family, he should have readily discovered it, and his failure to do so amounted to a failure to act with due diligence. The “ ‘ “undisputed evidence shows that the plaintiff failed to act with due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue,” ’ ” Ex parte Mobile Infirmary, 74 So.3d at 428 (quoting Ex parte Jackson, 780 So.2d 681, 684 (Ala. 2000), quoting in turn Snow, 764 So.2d at 537); thus, the trial court had no discretion to do anything other than to grant GM Canada’s motion seeking a summary judgment in its favor on the statute-of-limitations ground. For the foregoing reasons, we grant GM Canada’s petition and issue a writ of mandamus directing the Choctaw Circuit Court to enter an order granting GM Canada’s motion for a summary judgment.
PETITION GRANTED; WRIT ISSUED.
STUART, BOLIN, PARKER, MURDOCK, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., dissents.

. General Motors and, thus, MLC filed for bankruptcy protection on June 1, 2009. In conjunction with that bankruptcy proceeding, Poole ultimately settled his claim against MLC. Nothing in the record before us suggests that GM Canada participated in that bankruptcy filing.

. More specifically, Poole’s complaint identified the following fictitiously named defendants:
"Fictitious Defendant ‘A’ [is] that person, corporation or other legal entity who or which designed, engineered, tested, manufactured, marketed and distributed the 2004 Chevrolet Impala or any components thereof which is the subject matter of this lawsuit; Fictitious Defendant 'B' [is] that person, corporation or other legal entity who or which designed, manufactured, engineered, sold or otherwise placed into the stream of commerce any component parts of the 2004 Chevrolet Impala which is the subject matter of this lawsuit; Fictitious Defendant ‘C’ [is] that person, corporation or other legal entity who tested and developed the warnings for or developed the *238 manual for the 2004 Chevrolet Impala which is the subject matter of this lawsuit; Fictitious Defendant 'D' [is] that person, corporation or other legal entity whose negligence, wantonness or other wrongful conduct combined and concurred with the conduct of the defendants herein to cause the injuries as alleged herein....”

. Poole’s counsel stated that he discovered GM Canada’s identity by means of an Internet resource.

. Although the motor-vehicle accident made the subject of the underlying action actually occurred in Mississippi, the parties appear to agree that Alabama’s statute-of-limitations provision applies.

. Rule 9(h), Ala. R. Civ. P., provides:
“When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”

. The location of the Impala for the nearly two-year period preceding the filing of the complaint is unclear. However, the materials before us suggest that the vehicle was owned by Poole’s mother and that, for a period before and after the complaint was filed, the vehicle was in the possession of attorneys retained by Poole.

. We note that, in the trial court, the affidavit of Poole’s counsel stated not that he had been misled, but that it was his ''interpretation” of MLC’s answer that "led” him "to believe” that MLC had manufactured the vehicle.

. Poole’s counsel also testified that, prior to filing the request to substitute GM Canada for the fictitiously named defendants, he collected certain evidence regarding the vehicle, such as an accident report and photographs, and argues that "all of these documents and photographs identified [MLC] as the proper product liability defendant.” Poole's brief, at 17. However, we note that in the trial court it was asserted that these items did not "reveal[] [GM] Canada as the manufacturer of the subject vehicle,” not that they indicated that GM Canada was the manufacturer. We have examined the evidence cited for this assertion, " 'Ex. B' to Def.’s Attach. 7,” which appears to be photographs of the Impala; none of those photographs seems to indicate either MCL or GM Canada as the manufacturer.

. See Ex parte Nail, 111 So.3d 125, 131 (Ala. 2012) (" ‘Due diligence means ordinary, rather than extraordinary, diligence.’ " (quoting United States v. Walker, 546 F.Supp. 805, 811 (D.C.Haw. 1982))).