Rel: September 26, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2025-0127
_____

**Ex parte Grisby Jacob Thompson**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Samuel Moore and Victor Sambade**

**v.**

**Grisby Jacob Thompson et al.)**

**(Jefferson Circuit Court, CV-17-902684)**

WISE, Justice.

Grisby Jacob Thompson petitions this Court for a writ of mandamus

directing the Jefferson Circuit Court to set aside its February 4, 2025,

order denying his motion for a summary judgment and to enter a summary judgment in his favor. We grant the petition and issue the writ.

Facts and Procedural History

This case arises from an altercation that started outside the Zydeco nightclub ("the nightclub") during the early morning hours of May 21, 2017, which resulted in injuries to the plaintiffs, Samuel Moore and Victor Sambade.

On July 3, 2017, the plaintiffs sued Laissez Les Bon Temps Rouler, Inc., d/b/a Zydeco ("Zydeco"), in the Jefferson Circuit Court. The plaintiffs included various fictitiously named defendants, including "Fictitious Defendants Nos. 1 through 10," which the complaint described as "that person or those persons who injured Samuel Moore and Victor Sambade on May 21, 2017." The complaint alleged that the plaintiffs had been patrons at the nightclub during the late evening hours of May 20, 2017, and the early morning hours of May 21, 2017, and that "Fictitious Defendants Nos. 1 through 10" had consumed alcohol at the nightclub. It further alleged that, during that time, Zydeco and/or different fictitiously named defendants

> "sold, gave, provided or otherwise disposed alcoholic
> beverages to Fictitious Defendants Nos. 1 through 10,

2

> contrary to the provisions of the law, in that: Defendants and their employees sold and/or served alcoholic beverages while Fictitious Defendants Nos. 1 through 10 were underage or minors and while they were visibly intoxicated, contrary to the Rules of the Alabama Alcoholic Beverage Control Board and the Law of the State of Alabama."

The complaint further alleged that, while inside the nightclub, "Fictitious Defendants Nos. 1 through 10" harassed the plaintiffs "at or near the exit area"; that "Fictitious Defendants Nos. 1 through 10" were asked to leave the nightclub "by employees, agents, independent contractors, security personnel and/or the bouncer in the line and scope of his/her employment and for the benefit of Zydeco"; that the plaintiffs exited the nightclub around the same time "Fictitious Defendants Nos. 1 through 10" were exiting; that, "[i]n front of [the nightclub's] entrance and in the view of Zydeco's agents, employees and/or bouncer, Fictitious Defendants Nos. 1 through 10, punched, kicked and battered" the plaintiffs; and that the plaintiffs "attempted to escape but were precluded by the continuous beating from the gang and/or Fictitious Defendants Nos. 1 through 10[] and by the lack of security and assistance from Zydeco."

In Counts One through Three, the plaintiffs asserted various claims against Zydeco and "Fictitious Defendants Nos. 21 through 33," which included a Dram Shop claim pursuant to § 6-5-71, Ala. Code 1975. In

Count Four, the plaintiffs asserted negligence and wantonness claims against "Fictitious Defendants Nos. 1 through 20."[1]

On December 5, 2017, the plaintiffs filed an amended complaint in which they substituted William Andrew Hawkins for "Fictitious Defendant No. 1."[2] On February 28, 2018, the plaintiffs filed a notice of discovery indicating that they had served discovery requests, including interrogatories and requests for production of documents, to Hawkins.

On April 10, 2018, the plaintiffs filed their second amended complaint in which they substituted Christopher Barrett Striplin for "Fictitious Defendant No. 2."[3]

---

[1]The complaint designated "Fictitious Defendants Nos. 11 through 20" as "that person or those persons who are the parents, custodians and/or next friends of Fictitious Defendants Nos. 1 thorough 10, described above."

[2]The amended complaint initially designated Hawkins as W.A.H. and alleged that, at that time, Hawkins was "a minor and [was] being sued by and through his parent, guardian, or next friend, Samuel William Hawkins." During the course of the proceedings, Hawkins reached the age of majority.

[3]The second amended complaint initially designated Striplin as C.B.S. and alleged that, at that time, Striplin was "a minor and [was] being sued by and through his parent, guardian, or next friend, Amy Jill Striplin." During the course of the proceedings, Striplin reached the age of majority.

4

An interrogatory asked Hawkins to list the name and address of each and every person he was with "on late-night and early-morning May …20-21 2017," and, on May 30, 2018, Hawkins responded:

> "I do not recall each and every person I was with or that I may have talked to that night, I was hit in the head that night.  I recall that Amy Striplin was present at some time during the evening."

Another interrogatory asked Hawkins to provide the name and address of anyone who might have knowledge of the incident in question, "including but not limited to, eye witnesses to such an event."  Hawkins responded:  "Zyd[e]co employees may or may not have witnessed the events and Amy Striplin may or may not have witnessed the events."

On November 28, 2018, the parties filed a joint motion to continue the trial, which was set for the March 19, 2019, term.  The motion stated that discovery had been delayed by the ongoing investigation by the Birmingham Police Department regarding the incident.  It further asserted:

> "For efficiency, and to avoid a duplication of effort, much of the fact and expert discovery has been postponed until all defendants can be identified and added to the proceedings. Discovery additionally has been delayed by procedural matters involving Defendant William Andrew Hawkins."

5

The motion also asserted that Moore was undergoing further medical treatment. In addition to seeking a continuance of the trial, the parties also requested "that all discovery and motion deadlines be adjusted in accordance with the new setting."

On May 9, 2019, the parties filed a motion to continue the trial set for the September 16, 2019, term. That motion included substantially similar grounds as the previous motion. In addition to seeking a continuance of the trial, the parties again requested "that all discovery and motion deadlines be adjusted in accordance with the new setting."

At some point, Hawkins filed a motion to stay discovery. On April 29, 2020, the trial court entered an order granting Hawkins's motion and staying all discovery pending the outcome of a criminal action against Hawkins arising out of the same incident.

On October 21, 2020, the trial court entered an order stating that, during a status review, the parties had jointly filed a motion to modify the April 29, 2020, order staying all discovery. The trial court stated that "[t]he parties desire to engage in all permissible discovery under Rule 26, of the Ala. R Civ. P., save any discovery directed to Defendant William Andrew Hawkins, whose constitutional rights prohibit him from being

compelled to testify." The trial court granted the motion and stated that all discovery directed to Hawkins was stayed but that the parties were "permitted to engage in any and all other discovery allowable under Rule 26 of the Ala. R. Civ. P."

Subsequently, the plaintiffs filed an unopposed motion to lift the stay of discovery, which the trial court granted on April 8, 2021. On November 22, 2021, the plaintiffs deposed Hawkins. On February 21, 2022, the plaintiffs deposed Striplin.

On March 7, 2022, the plaintiffs filed their third amended complaint in which they stated that they were substituting Daniel McKenna, Jr., for one of the fictitiously named defendants.[4]

On September 19, 2022, the plaintiffs filed their fourth amended complaint in which they added a claim against Zydeco and "Fictitious Defendants Nos. 21-33" for violations of § 6-5-72, Ala. Code 1975, in Count Four. Count Five of the fourth amended complaint asserted

---

[4]Initially, the plaintiffs stated that the complaint was being amended to substitute McKenna for "Fictitious Defendant No. 4." Subsequently, they stated that they were substituting McKenna for "Fictitious Defendant No. 3."

negligence and wantonness claims against Hawkins, Striplin, McKenna, and "Fictitious Defendant nos. 3-20."

On May 17, 2023, the plaintiffs filed their sixth amended complaint[5] in which they substituted Thompson for one of the fictitiously named defendants.[6] Count Six of the sixth amended complaint asserted a negligence claim against Hawkins, Striplin, McKenna, Thompson, and "Fictitious Defendants 6-20," and Count Seven of the sixth amended complaint asserted a wantonness claim against Hawkins, Striplin, McKenna, Thompson, and "Fictitious Defendants 6-20."

On June 11, 2024, Thompson filed a motion for a summary judgment in which he argued that the plaintiffs' claims against him were barred by the applicable statute of limitations. Specifically, he asserted that the plaintiffs' negligence and wantonness claims against him were subject to the two-year statute of limitations set forth in § 6-2-38(l), Ala. Code 1975; that the incident that formed the basis of those claims against him occurred in May 2017; that the plaintiffs had filed their initial

---

[5]In his petition, Thompson states: "From the Alacourt file, it does not appear that Plaintiffs ever filed a Fifth Amended Complaint."

[6]The plaintiffs stated that they were substituting Thompson for "Fictitious Defendant 5."

8

complaint, which included fictitiously named defendants, on July 3, 2017; and that the statutory limitations period expired in May 2019. He further asserted:

"7. On September 21, 2021, Plaintiffs noticed the deposition of William Andrew Hawkins to be held on November 22, 2021, two and a half years after the statute of limitations had expired. (Doc. 472).

"8. At the November 22, 2021, deposition of William Andrew Hawkins, Plaintiffs' counsel asked Hawkins to list all the people he remembered being at the scene of the incident. One of the people Hawkins identified was this Defendant, Grisby Jacob 'Jake' Thompson. (See deposition of Hawkins, 37:3-7, attached as Exhibit 'A').

"9. In the same deposition, Plaintiffs' counsel asked Hawkins who he was 'hanging out with the most' on the night of the incident. (Exhibit A, 69:9-11). Hawkins answered that he was with Defendant Thompson more than anyone else on the night of the altercation. (Exhibit A, 69:12-14).

"10. On December 14, 2021, Plaintiffs noticed the deposition of Christopher Barrett Striplin to be held on February 21, 2022. (Doc. 492).

"11. At Striplin's deposition, Plaintiffs' counsel specifically asked if Striplin knew Defendant Thompson. (See deposition of Striplin, 60:20-22, attached as Exhibit 'B'). Striplin responded that he did not know a person named Jake Thompson. Id.

"12. During his deposition, Striplin identified Daniel Thomas 'Tommy' McKenna ('McKenna') as one person with him on the night of the incident. (Exhibit B, 18:18-23).

"13. On March 7, 2022, after learning the names of both McKenna and Thompson, Plaintiffs filed their Third Amended Complaint, which added Defendant Daniel McKenna, Jr. as a party, substituting him for the defendant previously identified as Fictitious Defendant No. 3. (Doc. 527). Thompson was not added as a party in the Third Amended Complaint. Id.

"14. On September 19, 2022, Plaintiffs filed their Fourth Amended Complaint, which appears to have added an additional cause of action. (Doc. 597). Thompson was not added as a party in the Fourth Amended Complaint. Id.

"15. On May 17, 2023, Plaintiffs filed their Sixth Amended Complaint, which added this Defendant as a party, substituting him for the defendant previously identified as Fictitious Defendant No. 5. (Doc. 648). The Sixth Amended Complaint added Thompson to the lawsuit approximately one and a half years after being identified in Hawkins's deposition and approximately four years after the statute of limitations expired. Id."

(Emphasis in original; footnotes omitted.)

In his motion, Thompson also asserted:

"Plaintiffs were clearly aware of this Defendant's identity as early as November 2[2], 2021. Plaintiffs' counsel questioned Striplin about Thompson's potential involvement during his deposition. Clearly Plaintiffs appreciated that Thompson may have been involved in the underlying altercation as early as February 21, 2022. After learning of Thompson's identity during the depositions of Hawkins and Striplin, Plaintiffs filed the Third Amended Complaint on March 7, 2022, substituting McKenna for one of the fictitious parties. (Doc. 527). Plaintiffs stated that McKenna's substitution was based on the testimony from the same depositions Plaintiffs learned of Thompson's identity. (Doc.

10

585, p. 6). However, despite Defendant Thompson being identified in those very same depositions, Plaintiffs did not substitute Thompson for a fictitious party in the Third Amended Complaint. This Defendant was not substituted for a fictitious party until May 17, 2023, approximately eighteen months after Plaintiffs were made aware of his identity and fourteen months after adding Defendant McKenna."

Thompson went on to argue that, "because the Plaintiffs did not exercise due diligence to identify Thompson as the true identity of the fictitious party, the Sixth Amended Complaint cannot relate back to the date of filing of the original Complaint and Plaintiffs' claims are time barred by the statute of limitations." Thompson also argued that the plaintiffs did not promptly amend the complaint to substitute Thompson for a fictitiously named defendant after learning his identity.

In their "Response in Opposition to Defendant Jake Thompson's Motion for Summary Judgment," the plaintiffs included the following allegations:

"9.     One of Hawkins' friends (who we now believe to be Thompson) was with Hawkins, wearing a hat, and participated in the altercation. [Doc. 670 at 122:05-123:23; 125:21-126:08; Doc. 671 at 25:08-21, 40:22-42:07, 58:10-14].

"10.    As of October 2023, through three depositions, neither Moore nor Sambade knew Thompson was the guy in the hat with Hawkins. [Id.; Doc. 671 at 21:19-22:20; Doc. 672; Exhibit D; Exhibit E; Exhibit F].

11

"....

"23.  There was a police investigation, but those files were not immediately available to the Plaintiffs.

"24.  On July 3, 2017, within just three months after the incident, Plaintiffs filed the original Complaint, [Doc. 2], alleging that they suffered injuries resulting from the negligent security of the bar, Defendant Laissez Les Bons Temps Rouler, Inc., d/b/a Zydeco (Zydeco), from Zydeco's sale of alcohol to Fictitious Defendants One (1) through Ten (10), and from the negligent actions of Fictitious Defendants One (1) through Twenty (20). [Doc. 2 at ¶¶ 9, 15-20, 33-37].

"25.  This initial complaint named specifically, inter alia, Fictitious Defendant No. 1 through No. 10 as being '… that person or those persons who injured Samuel Moore and Victor Sambade on May 21, 2017.' [Doc. 2].

"26.  This list of Fictitious Defendants was meant to encompass all those patrons, those individuals, who confronted, harassed, and injured the Plaintiffs.

"27.  Within this complaint's Statement of Facts, Plaintiffs clearly identify the time and location where they were injured.  [Doc. 2 at ¶¶ 7, 13-14].

"28.  The complaint includes a count for negligence and a count for wantonness, each incorporating and naming Fictitious Defendants 1 through 10.  [Doc. 2].

"29.  The fourth count was negligence and wantonness against the fictitious defendants.  [Doc. 2 at 12].

"30.  This initial complaint was accompanied with discovery requests served upon Zydeco requesting all identifying

information related to any witness, participant, and patron, as well as information that would potentially lead to such identities. [Docs 3 and 4].

"31. Additionally, within just over a month of filing the initial complaint, Plaintiffs also noticed and served third party subpoenas to entities the Plaintiffs expected could lead them to the identities of the Fictitious Defendants. These entities include the Birmingham Police Department for documentation of its investigation into the incident, Birmingham 911 to uncover any recordings or reports, and two businesses nearby Zydeco which might provide witness and/or video evidence.

"32. Once Plaintiffs learned that Andrew Hawkins (Hawkins) was involved, Plaintiffs filed their First Amended Complaint on December 5, 2017, substituting and naming Hawkins' father as next friend for Fictitious Defendant 1. [Doc. 71].

"33. Immediately upon Hawkins' appearance and answer of February 28, 2018, [Doc. 118], Plaintiffs served him with written discovery requests.

"34. None of the discovery requests sent to Zydeco provided any names for Fictitious Defendants 1-10.

"35. The Birmingham Police Department and 911 Call Center did not provide any material responsive to the subpoenas claiming that they could not do so long as an investigation was ongoing.

"36. Through Hawkins' discovery responses and information related to the criminal proceedings, Plaintiffs learned the identity of Amy Striplin, the mother of Christopher Barret[t] Striplin. [Doc. 120].

13

"37. Just over one month later, on April 4, 2018, Plaintiffs filed their Second Amended Complaint naming Amy Striplin as next friend to Christopher Barret[t] Striplin (Striplin), also a minor on May 21, 2017.

"38. Striplin filed a responsive pleading on August 16, 2018, [Doc. 218]. Amy Striplin and her son [Christopher Barrett] Striplin were initially represented by Thomas S. Moore. Mr. Thomas S. Moore's initial contact [with] Plaintiffs' counsel was erratic and sparse. He then became completely unresponsive and his whereabouts unknown.

"39. Unbeknownst to the Plaintiffs for some time during this case, Mr. Thomas S. Moore's law license became inactive, and he was no longer authorized to practice law.

"40. Plaintiffs rightly intended to set about a deliberate order in which evidence was obtained, and which defendants were deposed. This was crucial in a case such as this.

"41. Plaintiffs needed to obtain the third-party information and material responsive to [their] subpoenas to the Birmingham Police Department and the 911 call center.

"42. Additionally, Plaintiffs needed to then depose all parties, Hawkins, Striplin, and Zydeco as close in time together as possible. Doing so would minimize defendant gamesmanship and not disadvantage the Plaintiffs.

"43. But Hawkins was protected from access. His attorneys at the time refused to allow any deposition until the conclusion of Hawkins' criminal proceedings.

"44. The Parties, including the Plaintiffs at the time, reasonably believed that the Hawkins criminal

14

proceedings would be concluded in a normal amount of time, after which the Parties could resume litigating this matter beginning with deposing Hawkins. This is well documented in the Parties' November 28, 2018, Joint Motion to Continue stating that the matter was substantially delayed due to the ongoing investigation by the Birmingham Police Department in addition to, and as noted in the joint motion, Hawkins' criminal proceedings and Plaintiff Moore's continued medical treatment. [Doc. 281].

"45. Another Joint Motion to Continue was filed on May 9, 2019, again citing the same grounds, that the police investigation, criminal proceeding of co-Defendant Hawkins, and Plaintiff Moore's ongoing medical treatment was causing delay. [Doc. 302]. And a third joint motion to continue [was filed] on January 28, 2020.

"46. And by April 2020 this Court stayed all discovery pending the outcome of those criminal proceedings [Doc. 345]. (This order was later amended in October of 2020, to only stay discovery against Hawkins.).

"47. This beginning of this stay coincided with the onset of the COVID-19 pandemic, the delays and disruptions of which no one could have anticipated.

"48. This stay was not lifted until the April 8, 2021, [Doc. 411], while COVID-19's adverse effects [were] still greatly present. But as the stay was lifted, the Plaintiffs sought immediately to coordinate and notice the depositions of Hawkins, Striplin, and Zydeco representatives and employees. Having finally coordinated these depositions in a way to accommodate all Parties, Striplin, while being deposed on February 21, 2022, identified Daniel McKenna. McKenna was then named as a substituted fictitious defendant in

15

Plaintiffs' Third Amended Complaint on March 7, 2022. [Doc. 527].

"49. McKenna move[d] to dismiss based on the statute of limitations, which was denied. [Doc. 562 (Motion to Dismiss); Doc. 606 (Order Denying Motion to Dismiss)].

"50. Plaintiffs were aware that someone wearing a hat was with Hawkins as the confrontation escalated. But the Plaintiffs did not know who, despite repeated efforts to identify him.

"51. Hawkins claimed he did not know in his deposition.

"52. Hawkins claimed he did not know in his responses to written discovery.

"53. Hawkins claimed he did not know through informal discovery. [Exhibit D, emails with counsel].

"54. Between January 17, 2023, and February 9, 2023, counsel for the Plaintiffs and counsel for Hawkins engaged in informal discovery to identify Thompson. [Id.].

"55. Initially, Hawkins indicated that he could not identify the person with the 'beige' hat. [Id.].

"56. Plaintiffs then specifically identified the location in the video where the person can be seen. [Id.].

"57. After the specifics of the video were provided on February 9, 2023, counsel for Hawkins later confirmed verbally that Hawkins was still 'unable' to identify the other person who Plaintiffs then believed to be Thompson.

"58. On May 17, 2023, just 3 months later (as the 6-year statute date approached), the Plaintiffs amended to add Thompson as a defendant."

The plaintiffs argued that, although Hawkins had identified Thompson during his November 2021 deposition, "he did not provide sufficient (or any) information to discern that Thompson caused, or contributed to cause, the injuries to the Plaintiffs. As such, there was no basis, at the time, to amend." They went on to assert:

"Here, while the Plaintiffs did not amend for approximately 18 months from first hearing [Thompson's] name, that is misleading. When Thompson was identified in Hawkins' deposition, the Plaintiffs did not learn he was involved, only that he was present. The final effort to ascertain the identity of Thompson as the person in the hat was between January and February 9, 2023. Thompson was added by amendment in May 2023, just 3 months later. That is reasonably diligent."

On February 4, 2025, after conducting a hearing, the trial court entered an order denying Thompson's motion for a summary judgment.[7] Thompson subsequently petitioned this Court for a writ of mandamus directing the trial court to vacate its February 4, 2025, order denying his

_____

[7]The parties have not provided this Court with a transcript of that hearing.

17

motion for a summary judgment and to enter a summary judgment in his favor.

## Standard of Review

"'This Court will issue a writ of mandamus when the petitioner shows: "'(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'" Ex parte General Motors of Canada Ltd., 144 So. 3d 236, 238 (Ala. 2013) (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)). This Court generally will not review by a writ of mandamus a trial court's denial of a motion for a summary judgment unless one of a limited number of exceptions apply. The case before us satisfies one such exception:

"'"'... In a narrow class of cases involving fictitious parties and the relation-back doctrine, this Court has reviewed the merits of a trial court's denial of a summary-judgment motion in which a defendant argued that the plaintiff's claim was barred by the applicable statute of limitations. See Ex parte Snow, 764 So. 2d 531 (Ala. 1999) (issuing the writ and directing the trial court to enter a summary judgment in favor of the defendant); Ex parte Stover, 663 So. 2d 948 (Ala. 1995) (reviewing the merits of the trial court's order denying the defendant's motion for a summary judgment, but denying the defendant's petition for a

writ of mandamus); Ex parte FMC Corp., 599 So. 2d 592 (Ala. 1992) (same); Ex parte Klemawesch, 549 So. 2d 62, 65 (Ala. 1989) (issuing the writ and directing the trial court "to set aside its order denying [the defendant's] motion to quash service or, in the alternative, to dismiss, and to enter an order granting the motion) ....'"

"'Ex parte Mobile Infirmary Ass'n, 74 So. 3d 424, 427-28 (Ala. 2011) (quoting Ex parte Jackson, 780 So. 2d 681, 684 (Ala. 2000)).'

"Ex parte Nicholson Mfg. Ltd., 182 So. 3d 510, 512-13 (Ala. 2015)."

Ex parte Cowgill, 301 So. 3d 116, 121-22 (Ala. 2020).

"Further, although a petition for a writ of mandamus is the proper vehicle by which to seek review of the trial court's denial of a summary-judgment motion on a statute-of-limitations ground in the context of fictitious-party practice, the writ will issue '"only if undisputed evidence show[s] that the plaintiffs had failed to act with due diligence in identifying [the fictitiously named defendants] as the part[ies] intended to be sued."' Ex parte Stover, 663 So. 2d 948, 952 (Ala. 1995) (quoting Ex parte FMC Corp., 599 So. 2d 592, 595 (Ala. 1992) (emphasis added))."

Ex parte Nail, 111 So. 3d 125, 129 (Ala. 2012) (plurality opinion).

Discussion

Thompson argues that the trial court erroneously denied his motion for a summary judgment, which asserted that the applicable statute of

19

limitations barred the claims against him. The two-year statute of limitations set forth in 6-2-38(l), Ala. Code 1975, is applicable to this case, and the incident that gave rise to this case occurred on May 21, 2017. The plaintiffs filed their original complaint on July 3, 2017. They filed their sixth amended complaint, in which they substituted Thompson for one of the fictitiously named defendants, on May 17, 2023. It is undisputed that the sixth amended complaint was filed after the expiration of the applicable statutory limitations period. The question to be answered is whether the sixth amended complaint relates back to the filing of the original complaint.

"'Rule 9(h), Ala. R. Civ. P., provides:

"'"When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when the party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."

"'This rule permits a party who is "ignorant of the name of an opposing party" to identify that party by a fictitious name. Once the true name of the opposing party is discovered, the party may amend the pleadings to substitute that true name. Rule 15(c)(4), Ala. R. Civ. P., provides that such an

20

amendment shall "relate[] back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)."

> > "'"However, the relation back principle applies only when the plaintiff 'is ignorant of the name of an opposing party.' Rule 9(h); <u>Harmon v. Blackwood</u>, 623 So. 2d 726, 727 (Ala. 1993) ('In order to invoke the relation-back principles of Rule 9(h) and Rule 15(c), a plaintiff must ... be ignorant of the identity of that defendant....'); <u>Marsh v. Wenzel</u>, 732 So. 2d 985 (Ala. 1998)."

> "'<u>Ex parte General Motors [of Canada Ltd.]</u>, 144 So. 3d at [236] at 239 [(Ala. 2013)].

> > "'"'The requirement that the plaintiff be ignorant of the identity of the fictitiously named party has been generally explained as follows: "The correct test is whether the plaintiff knew, <u>or should have known</u>, or was on notice, that the substituted defendants were in fact the parties described fictitiously." <u>Davis v. Mims</u>, 510 So. 2d 227, 229 (Ala. 1987) ....'"

> "'<u>Ex parte Mobile Infirmary [Ass'n]</u>, 74 So. 3d [424] at 429 [(Ala. 2011)] (quoting <u>Crawford v. Sundback</u>, 678 So. 2d 1057, 1060 (Ala. 1996) (emphasis added)).

> "'In addition to being ignorant of the fictitiously named party's identity, the plaintiff

has a duty to exercise "due diligence" in identifying such a defendant. Ex parte Mobile Infirmary, 74 So. 3d at 429; Crowl v. Kayo Oil Co., 848 So. 2d 930, 940 (Ala. 2002). It is incumbent upon the plaintiff to exercise due diligence both before and after the filing of the complaint. Ex parte Ismail, 78 So. 3d 399 (Ala. 2011). Only if the plaintiff has acted with due diligence in discovering the true identity of a fictitiously named defendant will an amendment substituting such a party relate back to the filing of the original complaint. Ex parte Mobile Infirmary, 74 So. 3d at 429....

"'"[A]n amendment substituting a new defendant in place of a fictitiously named defendant will relate back to the filing of the original complaint only if the plaintiff acted with 'due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue.' Ignorance of the new defendant's identity is no excuse if the plaintiff should have known the identity of that defendant when the complaint was filed...."

"'74 So. 3d at 429 (quoting Ex parte Snow, 764 So. 2d 531, 537 (Ala. 1999) (emphasis added)).'

"Ex parte Nicholson Mfg., 182 So. 3d at 513-14."

Ex parte Cowgill, 301 So. 3d at 122-23.

"This Court discussed those principles in Ex parte Griffin, 4 So. 3d 430, 436 (Ala. 2008), stating:

"'This Court has held with regard to Rule 9(h) and the relation-back principles of Rule 15(c), Ala. R.

22

Civ. P., that the plaintiff must state a cause of action against the fictitiously named party in the body of the original complaint; that the plaintiff's ignorance of the true identity of the party intended to be sued is "in the sense of having no knowledge" of the party's identity at the time the complaint was filed; and that the plaintiff must have used due diligence in attempting to discover the identity of the fictitiously named party. Columbia Eng'g Int'l Ltd. v. Espey, 429 So. 2d 955, 958 (Ala. 1983). To be entitled to the benefit of the relation-back principles, the plaintiff must act with due diligence to ascertain the fictitiously named defendant's true name and to promptly amend the complaint to correctly identify that defendant. The due-diligence standard, as stated in Davis v. Mims, 510 So. 2d 227, 229 (Ala. 1987), "is whether the plaintiff knew, or should have known or was on notice, that the substituted defendants were in fact the parties described fictitiously."'

"Thus, in order for the relation-back doctrine to apply and justify the substitution of a defendant for a fictitiously named party after the limitations period has run, the plaintiff seeking such substitution must establish: (1) that it stated a cause of action against the defendant in the body of the original complaint, albeit identifying the party only as a fictitiously named party; (2) that it was ignorant of the defendant's identity at the time the original complaint was filed; (3) that it exercised due diligence to identify the fictitiously named party; and (4) that it promptly amended its complaint once it knew the identity of the fictitiously named party. Id. The absence of evidence establishing any one of these factors is sufficient to support a trial court's judgment disallowing the outside-the-limitations-period substitution."

23

Patterson v. Consolidated Aluminum Corp., 101 So. 3d 743, 746-47 (Ala. 2012). "'Due diligence means <u>ordinary</u>, rather than extraordinary, diligence.' <u>United States v. Walker</u>, 546 F. Supp. 805, 811 (D.C. Hawai'i 1982) (emphasis added); see also <u>State v. Gonzales</u>, 151 Ohio App. 3d 160, 171, 783 N.E.2d 903, 911-12 (2002)." <u>Ex parte Nail</u>, 111 So. 3d at 131 (plurality opinion). "Although '[t]he conducting of formal discovery does not necessarily prove due diligence,' <u>Ex parte Tate & Lyle Sucralose, Inc.</u>, 81 So. 3d 1217, 1221 (Ala. 2011), 'it commonly is vital to demonstrating due diligence because it provides objective evidence of the plaintiff's case activity.' <u>Ex parte Hensel Phelps Constr. Co.</u>, 7 So. 3d 999, 1004 (Ala. 2008)." <u>Id.</u> at 129.

> "'The purpose of Rule 9(h) is to toll the applicable statute of limitations when the plaintiff has diligently pursued the identity of, but has been unable to identify, certain defendants. The fictitious name serves as a placeholder for the defendant, and Rule 15(c)[, Ala. R. Civ. P.,] allows the claim against the substituted defendant to relate back to the date of the original complaint. <u>Toomey v. Foxboro Co.</u>, 528 So. 2d 302 (Ala. 1988).
>
>> "'"Rule 9(h)[, Ala. R. Civ. P.,] is not intended to give plaintiffs additional time beyond the statutorily prescribed period within which to formulate causes of action. Instead, the principal reason for the rule is to toll the statute

of limitations in emergency cases where [the] plaintiff knows he has been injured and has a cause of action against some person or entity, but has been unable to ascertain through due diligence the name of that responsible person or entity."

"'Columbia Eng'g Int'l, Ltd. v. Espey, 429 So. 2d 955, 959 (Ala. 1983) (citing Browning v. City of Gadsden, 359 So. 2d 361 (Ala.1978)).'

"Weber v. Freeman, 3 So. 3d 825, 832 (Ala. 2008)."

Ex parte Ismail, 78 So. 3d 399, 406-07 (Ala. 2011).

Thompson does not dispute that the original complaint alleged a cause of action against the fictitiously named defendant for which Thompson was substituted. Additionally, he concedes that that there does not appear to be any evidence indicating that the plaintiffs knew his identity at the time they filed the original complaint. Therefore, he concedes that the plaintiffs could satisfy the first and second factors set forth in Patterson. However, he argues that the plaintiffs cannot establish that they exercised due diligence to identify him or that they promptly amended the complaint once they knew his identity.

It is undisputed that, during Hawkins's November 2021 deposition, the plaintiffs learned that Thompson was one of the people with Hawkins

25

on the night of the incident giving rise to the case and that Hawkins stated that he was probably with Thompson more than anyone else that night. Additionally, when asked if he remembered who was next to him as he was exiting the bar, Hawkins replied, "I want to say Jake," and stated that that was based on watching a video. During his deposition, Hawkins testified that, when he got outside the nightclub, Moore hit him and knocked him down; that that was the first punch thrown that night; that he did not throw any punches that night; and that Thompson was with him when Moore hit him. Hawkins testified that, after he got up, he heard someone say "'Run'"; that he saw Thompson running; that he also ran; that he thought somebody was going to pick them up down the road; and that, at some point, he stopped, but Thompson went left.

In February 2022, the plaintiffs deposed Striplin. Thompson points out that, during that deposition, the plaintiffs asked Striplin about Thompson, but Striplin stated that he did not know Thompson.

In their response to the motion for a summary judgment, the plaintiffs argued that, although they had discovered Thompson's name during Hawkins's deposition, they had not learned any information to suggest that Thompson was involved in the incident at issue. The

plaintiffs stated that they "were aware that someone wearing a hat was with Hawkins as the confrontation escalated. But the Plaintiffs did not know who, despite repeated efforts to identify him." The plaintiffs also pointed out that, in his deposition, Hawkins stated that he did not know who the person in the hat was. The plaintiffs assert that they exercised due diligence in attempting to determine whether Thompson was involved in the incident and in attempting to discover the identity of the person in the hat.

In their answer to the mandamus petition, the plaintiffs assert that "all [they] effectively knew was Thompson's identity and presence. They did not know Thompson's role." Answer at 32. They go on to argue that they took reasonable steps to identify Thompson. The plaintiffs do not discuss any formal discovery they conducted after Striplin's February 2022 deposition to attempt to determine whether Thompson was involved in the incident or to attempt to learn the identity of the person in the hat. The plaintiffs do assert that they conducted informal discovery between January 17, 2023, and February 9, 2023. However, that informal discovery did not take place until over a year after Hawkins testified, during his deposition, that Thompson was with him at the nightclub on

27

the evening in question and approximately 11 months after Striplin's deposition. Additionally, in their answer, the plaintiffs do not allege that they took any other actions between February 2022 and January 17, 2023, to determine whether Thompson was involved in the incident or to determine the identity of the person in the hat. Thus, the plaintiffs cannot establish that they exercised due diligence to determine whether Thompson was involved in the incident that forms the basis of this action. Accordingly, the sixth amended complaint does not relate back to the filing of the original complaint, and the claims against Thompson are barred by the applicable statute of limitations. Therefore, the trial court erred when it denied Thompson's motion for a summary judgment.

## Conclusion

For the above-stated reasons, we grant the mandamus petition and issue the writ directing the trial court to set aside its February 4, 2025, order denying Thompson's motion for a summary judgment and to enter a summary judgment in Thompson's favor.

28

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Shaw, Sellers, Mendheim, Cook, McCool, and Lewis, concur.

Bryan, J., concurs in the result